PATTERSON *et al. vs.* COLLIER *et al.,* executors.

1. In an action of ejectment, one of the plaintiff's lessors died pending the suit, leaving surviving him a widow and one child by a former marriage, and also leaving a will, in which the widow and others were appointed his executors. The will was probated, and the executors named qualified and became parties to the suit in lieu of their testator. Before the case came on for trial, the widow died, she having previously received all of the estate of her husband to which she was entitled. After her death, the suit proceeded in the name of the surviving executors. The presiding judge had been related to the widow within the fourth degree of consanguinity and, therefore, to her husband in the same degree of affinity. He was elected judge after the death of both the husband and wife, and at the time of the trial, he bore no such relation to any one having any interest in the subject-matter of the suit or in the testator's estate:

*Held,* that the judge was competent to preside on the trial of the case.

2. Where, in an ejectment cause, both parties claimed under a common grantor, and the deed to him and also one of the deeds purporting to be made by him, under which the defendant claimed, were lost, and counsel agreed in writing that copy deeds from the records might be used in lieu of the originals, "without exhibiting the primary evidence or accounting for it," such agreement merely dispensed with the necessity for laying the foundation for the introduction of secondary evidence, but did not estop the plaintiff from attacking as a forgery the deed under which the defendant claimed in the manner prescribed by §2712 of the Code.

3. It is doubtful whether the deed in question could be considered as an ancient document in a legal sense, and it is certain that a copy of such a document cannot be used to establish its age and the presumption of its proper execution arising therefrom.

(*a.*) An ancient deed may be attacked, like any other deed, for forgery

4. Where a deed which was attacked as a forgery purported to have been attested by a witness who signed as a justice of the peace, and from certified copies of the records in the executive office of the state, it was shown that such person did not hold a commission as justice of the peace at the date of the alleged attestation, nor until some time thereafter, such proof, if unrebutted, would have been conclusive as to the forgery. A charge of the court that the jury might consider how far the inference arising from the records was rebutted by parol testimony going to show that the person who attested the deed acted as a justice, and if not a *de jure,* was at least a *de facto* justice, at that time, and if a *de facto* justice only, still his acts might be valid, and if such facts had been shown to

them, they were circumstances that they might regard in considering the question at issue, was more favorable to the defendant than he had any right to expect; and a request to charge still more favorably was properly refused.

5. The charge, as a whole, was fair and comprehensive, and the verdict is supported by the evidence.

November 17, 1885.

Judge. Relationship. Deeds. Forgery. Evidence. Attorney and Client. Justice of the Peace. Before Judge FORT. Stewart Superior Court. April Term, 1885.

To the report contained in the decision, it is only necessary to add, in connection with the third and fourth divisions thereof, that the sixth and seventh grounds of the motion for a new trial were, in substance, as follows:

(6.) Because the court erred in ruling that the agreement set out in the second division of the decision did not authorize the records to be used in the same manner as the originals, as ancient deeds.

(7.) Because the following portion of the court's charge contains error: " Now, if Patterson, the defendant in ejectment, should show you by the proof that there was a justice of the peace at the time in the state, of that name, or if he should show you that John Mays was acting justice in such manner as to constitute him a *de facto* officer, you might consider these circumstances in estimating the value of the evidence and in ascertaining the truth as to whether or not this deed was genuine; you might consider these circumstances as to how far they rebut the presumption just heretofore stated. Now, if a person assumes to be a justice of the peace, and if he acts as such officer in a particular district notoriously, if he is so respected and regarded by the citizens of the district, so recognized, although he may have no commission, still his acts might be valid; and if such acts have been shown to you, they are circumstances that you may regard in considering the question at issue."

W. A. LITTLE; W. C. WORRILL; J. L. WIMBERLY & SON; T. D. HIGHTOWER, for plaintiff in error.

W. D. KIDDOO, for defendants.

HALL, Justice.

William A. Rawson, one of the plaintiff's lessors, died pending the action, leaving surviving him his widow and one child by a former marriage, and also leaving a will, in which the widow and others were appointed his executors. The will was proved, and the executors named qualified, and became parties to the suit in lieu of their testator. Before the case came on for trial, Mrs. Rawson died, she having previously received all of her husband's estate to which she was entitled; after her death, the suit proceeded in the name of the surviving executors. Judge Fort, who presided at the trial, was related by blood to Mrs. Rawson within the fourth degree of consanguinity, and was, consequently, related to her late husband in the same degree by affinity. He was elected judge after the death of both these persons, but at the time of the trial, he bore no such relation to any of the parties to the suit, or to any one having any interest whatever in the subject-matter of the same or in Mr. Rawson's estate. When the case was called for trial, objection was made to his presiding, on account of his past relationship to these parties. Anxious to avoid anything like an appearance of partiality or prejudice in the conduct of the suit, and to preserve both himself and the tribunal over which he presided from the appearance of suspicion, he asked to be excused from the performance of this duty, and suggested that the parties select some one as judge *pro hac vice* to preside in his stead. This suggestion was declined, for the reason that such an agreement could not be lawfully made, unless he was disqualified. He was thus forced to pass upon and determine his own qualification to act as judge. When the alternative was presented between the inclination of a magistrate,

sensitive of his own reputation and that of the court over which he presided, on the one hand, and his duty to the public and to parties, on the other, and being convinced of his own eligibility to perform this duty, he could not hesitate as to the course he ought to take. He investigated the question carefully, and after full argument, concluded very properly, as will be seen, that it was his duty to act at the trial, and this made the first ground of the exception.

1. We are satisfied that the result reached was correct; that there was no good reason in law or in fact why he was not competent to afford the parties litigant a fair and impartial trial, and why he was not in a position to shield both himself and the court from the imputation of improper conduct. The caution with which he proceeded, and the thorough and patient investigation given to the subject, under the most trying and embarrassing circumstances, should have been sufficient to disarm the suspicions of even the most censorious. While it is true that, under our law (Code, §205), a judge or justice cannot sit in any cause or proceeding, where he is related to either of the parties within the fourth degree of consanguinity or affinity, or in which he or his relations have any pecuniary interest, or in which he has been of counsel, without the consent of parties, and while we are impressed with the importance of affording to parties a trial free from partiality or bias on the part of the presiding magistrate and others engaged therein, and we shall strenuously insist that the administration of justice shall not only be pure, but above suspicion, yet we are not prepared to go to the length of holding that, if the facts from which these unfavorable inferences may be deduced have ceased to exist at the time of the trial, and cannot therefore possibly come into operation, they are sufficient to disqualify the judge, and to relieve him from the duty of affording the parties an early opportunity of having their case tried.

The precise question made has never before, so far as

we are informed, been presented for adjudication by our courts, but there are not wanting analogous cases involving principles that bear upon the point under consideration. In *Deupree, et al., ex'rs, vs. Deupree et. al.*, 45. *Ga.*, 414, a widow, who was a party to a marriage contract with her deceased husband, which, together with another instrument, was subsequently propounded as his will, was held a competent witness upon the trial of a *caveat* to the same, especially when she had barred herself from taking anything from his estate. The principle established by this decision was thought applicable to a case in which the qualification of a judge of the superior courts was called in question, on account of his supposed affinity to one of the parties. There the widow of the brother of the judge's wife was married to the defendant; the marriage of the judge having taken place after the brother's death, and before the second marriage of the widow, he was held not to be disqualified because of such relationship. *Fort vs. West et al., adm'rs.*, 53 *Id.*, 584. In *Oneal vs. The State*, 47 *Id.*, 230, 248, a juror, who had married the widow of the prosecutor's uncle, was held not to be incompetent on that account to serve on the trial.

According to the strictest rule of the common law in cases closely analogous, it would seem that affinity, where the party was dead, towards whom the presiding magistrate or sheriff summoning a jury bore that relation, would not amount to a disqualification, especially where no widow or child survived him, who might have an interest in the subject-matter of the controversy. Lord Coke, in his commentary upon Littleton, 156 (a), says a challenge to the array of jurors lies where the " sherife or other officers be of kindred or affinitie to the plaintife or defendant, if the affinitie continue." In *Munson vs.* West, 1 Leonard, 88, it seems to have been held necessary to the continuance of the husband's affinity, that he should have had issue living by the wife, though she be dead, and it mattered not that such issue should be heritable to the land,

where that was the subject of the action.   The text of
Coke and the determination in the case from Leonard
seem to have furnished the rule upon which the courts
of this country have most usually acted when dealing with
this question.   See Cain *vs.* Ingham, 7 Cowen's R., 478
and note (a) there, which collates and classifies most of the
authorities and cases upon the subject; also Carman *vs.*
Newell, 1 Denio, 25 ; Higbe *vs.* Leonard, *Ib.*, 186 ; Matter
of App. of Receiver D. and S. Mfg. Co., 77 N. Y., 101.

The case most directly in point is the Town of Winches-
ter *vs.* Hinsdale *et al.*, 12 Conn., 87, in which it was held,
where a party to the suit had married the aunt of the judge
before whom such suit was tried, but before the commence-
ment of the same, she had died, leaving issue, who, as well
as the husband, were living at the time of the trial, that
the judge was not thereby disqualified to officiate in the
cause.   This is the judgment of an able and distinguished
bench, founded, it is true, upon the statute of the state, but
which, as far as it goes, does not differ from our own, as
will be seen when reference is had to the opinion in full
Mr. Justice Church, who delivered the opinion (p. 92),
says: " We are equally well satisfied that no such relation-
ship existed between Judge Burrall and Martin Rockwell,
Esq., as disqualified the former to give judgment in this
case.   In England no relationship existing between a judge
and a party is a disqualification.   A judge is presumed to be
impartial and uncorrupt.   By our law the relationship of
uncle and nephew, by nature or marriage, disqualifies a
judge.   Stat., 148, tit., 21, s.38.   By the marriage of his
aunt with Rockwell, Judge Burrall became nephew by mar-
riage to that gentleman ; but the dissolution of the marriage
by the death of the aunt dissolved the relationship of uncle
and nephew, which had been constituted by the marriage.
The circumstance that children of the marriage survive
does not, in our opinion, operate to continue the affinity;
for although Judge Burrall and Mr. Rockwell are in differ-
ent degrees of consanguinity related to the surviving chil-

dren, we see not that from this cause they are connected in any degree of affinity with each other. 1 Bla. Com., 436."

Though the facts in our case do not require us to go to the length of this decision, inasmuch as both the kinswoman of the judge and her husband were dead when he took charge of the case, and she left no child or other descendant by him, and had been settled with for all she was entitled to in the estate, yet we are much impressed with the sound sense and satisfactory reasoning of this decision. To multiply disabilities by a more than doubtful construction, when none are created by the words of the statute, we apprehend, would be as unwise as it is impolitic and harmful. The admirable sagacity of our British ancestors in extending to their judges the fullest confidence, and discouraging everything like distrust of their integrity and wisdom, has been amply vindicated by results. In their long career as a government, there has been but one miscreant like Jeffreys, and but a single instance of moral infirmity like that f Bacon. This generous confidence has promoted, if not created, a pride of character and a pride of places, that has secured an incorruptible and efficient administration of justice and has afforded ample protection to every right of the subject and the crown. It has made England, in this respect, a light to the world, and the admiration, if not the envy, of other nations.

2. Both parties in this case claimed under Anderson Covington, who, it is admitted, derived title to the land in dispute from the person to whom it had been granted by the state. The plaintiffs claimed under a quit-claim deed from Covington to Martin Burke, and the defendant held under a warranty deed from Covington to George W. Hamil. Two deeds in this chain of title were lost, viz., one from Scruggs to Covington, and that from Covington to Hamil, and counsel agreed in writing that copy deeds from the record might be used in lieu of the originals, " without exhibiting the primary evidence or accounting for it."

It is now insisted that this agreement estopped the plaintiffs from attacking, in the manner prescribed by law (Code, §2712), as a forgery, the deed from Covington to Hamil, and that the court erred in refusing so to hold.

Estoppels are not generally favored and are never resorted to, except where it would be more unjust and more productive of evil to hear the truth than to forbear the investigation. Code, §3753. It is true that the estoppel relied on here was a solemn admission *in judicio*, made during the progress of the trial, and upon which both parties acted, and to the extent of the admission thus made, parties are bound by it, but we do not understand from its terms that the plaintiffs waived any right to render the prosecution of his suit effective by denying the genuineness or validity of the title under which their opponent held possession of the premises. Had this been in contemplation, it seems to us it would have been expressed in plain and unequivocal terms, and had an agreement been offered in such terms to the plaintiffs, it is quite probable that it would, without hesitancy, have been rejected; had they consented to such terms, it would have amounted to an abandonment of their suit. Its sole purpose was to dispense with the necessity of laying the foundation for the introduction of secondary evidence. There is nothing equivocal or ambiguous in the terms of the agreement; they were designed only to relieve the parties from the necessity of accounting for the lost originals and of exhibiting "the primary evidence," which, without this waiver, they would have been compelled to introduce. This exception is, therefore, not well taken. It is scarcely necessary to remark, that it was the duty of the court to interpret this agreement, and that he did not err in withholding it as an instrument of evidence from the jury. They had nothing to do with it; it was not intended for them.

3. There was no error in the ruling excepted to in the sixth ground of the motion for a new trial. It is at best

doubtful whether the deed in question could in a legal sense be considered an ancient document, and it is certain that a copy of such a document cannot be used to establish its age and the presumption arising therefrom of its proper execution. *Bryan vs. Walton, adm'r,* 14 *Ga.,* 185; *Jones et ux. vs. Morgan,* 13 *Id.,* 515. That an ancient deed may be attacked, like any other deed, for forgery is well settled. *Mills, adm'x, vs. May, adm'r,* 42 *Id.,* 623; *Hill vs. Nisbet, trustee,* 58 *Id.,* 587.

4. We think the court committed no error of which the defendant can, with any show of propriety, complain in in the charge excepted to in the 7th ground of the motion for a new trial. The jury might certainly infer the spuriousness of the deed attacked from the certificate emanating from the executive department, to the point that the justice of the peace who attested the deed was not in commission at the date of this attestation; and a charge to the effect that they might consider how far this inference was rebutted by testimony going to show that he acted in that capacity, and was, if not a *de jure,* at least a *de facto* justice at that time, and if a *de facto* justice only, ' still his acts might be valid, and if such had been shown to them, they were circumstances that they might regard in considering the question at issue,' was more favorable to the defendant than he had any right to ask. The law is not, as defendant's counsel insisted, "that full proof of the attesting witness being a *de facto* officer, as defined by the charge, was a complete rebuttal of the presumption of forgery arising from proof furnished by the records from the executive department, that he held no commission." The proof of such circumstances as were testified to in connection with his acting in the capacity of justice prior to the date of the commission, might, perhaps, be properly considered by the jury in determining whether the deed was a forgery. Had the court gone further, and charged, as defendant's counsel thought he should have charged, in our opinion he would have committed grave error. He

had no right to assume that the proof that the attesting justice acted in that capacity was full.   An examination of the record satisfies us that the only witness (Jenkins) who testifies as to the facts was mistaken as to the date at which he seems to think they occurred.   Mays, whose name appears as the attesting justice, was twice elected, each time for a full term, as was shown by the exemplification from the executive department.   Jenkins swears that he was first elected to fill an unexpired term, and then was elected, with himself, for a full term.   It is clear that he filled the whole of the first term and died during his second term.   The first commission was issued subsequent to the date of the deed; and the memory of this witness, who, it appears, was an old man, was evidently at fault as to the time of these occurrences.   The force and effect of such testimony as that offered in rebuttal must be left to the jury.   Without rebutting evidence, the certificate from the executive department would have been conclusive as to the forging of this deed, as has been several times determined by this court.   In *Fain vs. Garthright*, 5 *Ga.*, 6, the court seems to have gone still further, for it is there said that a certified copy of the record of commissions from the executive office is the highest and best evidence of the fact that one who appears, from his acts, to have been a justice of the peace in a given county, at a particular time, was not a justice of the peace during that time.   Also *Ib.*, pp. 10 to 12, inclusive.   *Durham vs. Holeman*, 30 *Id.*, 619; *Williams vs. Goolall*, 60 *Id.*, 482.

5. The 18th ground of the motion excepts to the entire charge as summing up more favorably for the plaintiff than the defendant, and specifies instances in which it is alleged this was the case.   We are compelled to say that a careful examination of this able, fair and comprehensive charge leaves no such impression upon our mind.

The foregoing are the only special grounds of the motion for a new trial.   The general grounds may be disposed of by

the remark that the verdict appears to be in accordance with the weight of the evidence, and as it violates neither law nor evidence, it should not be disturbed.

Judgment affirmed.