66344. KOETS, INC. v. BENVENISTE et al.

SOGNIER, Judge.

Morris and Marilyn Benveniste, purchasers, sued Koets, Inc. (Koets), vendor, to recover $15,000 earnest money paid at the time the parties entered into a real estate sales contract for the purchase of a house and lot. Koets counterclaimed for damages resulting from the Benvenistes' alleged breach of the contract. The contract, executed on May 25, 1981, provided: "Purchaser shall have until June 15, 1981 to arrange a swing and/or permanent financing. Should such financing not materialize all earnest money shall be refunded to Purchaser." The contract further provided that the sale was to be closed on or before July 15, 1981, and specified that time was of the essence. On July 5, 1981, the Benvenistes informed Koets that the sale would not close. In the interim, Koets had performed certain customizing work on the house pursuant to contract specifications after the Benvenistes allegedly informed Koets that financing was no problem and the work should proceed. Both parties moved for summary judgment. The trial court granted summary judgment in favor of the Benvenistes as to the principal amount of $15,000, reserving for jury determination issues of punitive damages, attorney

fees, and interest. Koets appeals.

1. Appellant contends that the trial court erred by granting summary judgment in favor of appellees on the main action and on appellant's counterclaim. Appellees contend that they were entitled to summary judgment because the contract was void for vagueness, lacked mutuality, and was therefore unenforceable. Appellees base their contention upon the contract contingency provision as to financing. However, our Supreme Court held in *Brack v. Brownlee,* 246 Ga. 818 (273 SE2d 390) (1980), that a discretionary contingency provision placed in a real estate sales contract for the purchaser's protection does not render the contract unenforceable for lack of mutuality where the purchaser has provided consideration for the contract by paying earnest money. Inasmuch as all clauses impose a discretionary contingency upon performance of the contract, we find nothing to distinguish the contingency financing clause in the contract in the instant case from similar clauses interpreted in *Brack, Potts v. Smith,* 134 Ga. App. 737 (215 SE2d 697) (1975), and *Alodex Corp. v. Brawner,* 134 Ga. App. 630 (215 SE2d 527) (1975), the latter two cases having been expressly overruled by *Brack.* As sufficient consideration was provided by appellees' payment of earnest money, the contract in the instant case was not rendered void by the discretionary financing contingency provision. *Brack,* supra at 819.

Insofar as *Harrington v. Norris B. Strickland & Assoc.,* 161 Ga. App. 518 (289 SE2d 17) (1982) is contrary to the opinion rendered in *Brack,* supra, it is overruled. While *Harrington* might have been decided on a different premise — that the purchaser is entitled to a refund of earnest money because the condition precedent of obtaining the loan was not fulfilled despite his good faith efforts (see *Brack,* supra at 822) — it was not. Instead, the holding announced that: "There being no mutuality, there was no contract and thus no obligation to purchase." *Harrington,* supra at 519. This holding is contrary to the principle underlying *Brack:* "[M]utuality is not required where there is consideration for a contract other than merely mutual promises. . . ." *Brack,* supra at 820. The facts in *Harrington,* supra, disclose that as in *Brack* and in the instant case, payment of earnest money provided the necessary consideration to support the contract. See *Brack,* supra at 819.

We feel that the language of the *Harrington* decision, which refers several times to the purchaser's *ability* to procure the loan as the contingency depriving the contract of mutuality, belies the reliance of the dissent upon any factual distinction between "ability to procure" versus "procurement" clauses. We do note, also that while the *Brack* court did not expressly overrule *F&C Investment Co. v. Jones,* 210 Ga. 635 (81 SE2d 828) (1954), the *Alodex* decision, which

*Brack* did overrule, relied directly upon *Jones* for its authority. See *Alodex,* supra at 631. It is our conclusion that *Brack* holds that a discretionary financing clause, whether contingent upon "procurement" or "ability to procure," does not vitiate the entire contract for lack of mutuality. *Brack,* supra at 821.

2. Appellant contends that a question of fact remains as to whether appellees exercised diligence and good faith in seeking to obtain financing. "[T]he purchaser has an implied duty 'to diligently seek to have (the financing) contingency take place.' [Cit.] This implied duty must be exercised in good faith. [Cit.]" *Brack,* supra at 819. In an affidavit in support of the motion for summary judgment, appellee Morris Benveniste described his unsuccessful efforts to obtain swing loans or permanent financing from three lending institutions. This evidence was uncontroverted. OCGA § 9-11-56 (e) (Code Ann. § 81A-156) provides: "When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial." In the absence of any evidence showing a lack of diligence and good faith on appellees' part, the trial court did not err in finding that no fact questions remain on this issue. Cf. *Johnson v. C. & S. Bank,* 144 Ga. App. 515, 516-517 (241 SE2d 625) (1978).

3. Appellant contends that issues of fact remain as to whether appellees waived the financing condition of the contract and whether appellees are estopped from asserting that the contract is void due to nonfulfillment of the financing condition. We agree.

Appellant's president testified by affidavit that on June 16, 1983 Morris Benveniste assured him that financing was no problem and that appellant should proceed with the customizing of the house, which appellant did in reliance on Benveniste's statements. Benveniste's affidavit denied that appellant was so informed.

a. A financing condition, which is included in a real estate contract for the purchaser's protection, may be waived by the purchaser. *Brack,* supra at 820. See *Blower v. Jones,* 226 Ga. 847, 848 (2) (178 SE2d 172) (1970); *Whitley v. Patrick,* 226 Ga. 87, 89 (3) (172 SE2d 692) (1970). See also *Blanton v. Williams,* 209 Ga. 16, 17 (a) (70 SE2d 461) (1952). Appellees argue that no waiver occurred in the instant case because the condition precedent for financing failed on June 15, and since time was of the essence, the contract automatically terminated on June 15, 1981, prior to the date of the purported waiver. However, even though the contract stated that time was of the essence, this provision could be waived, and conduct either before or after the deadline for obtaining financing could show waiver.

"Timely performance may be waived orally when acted on by one or both of the parties." *Edwards v. McTyre,* 246 Ga. 302, 303 (3) (271 SE2d 205) (1980). See also *Smothers v. Nelson,* 246 Ga. 216, 218 (271 SE2d 137) (1980); *Perry Dev. Corp. v. Colonial Contr. Co.,* 231 Ga. 666, 668 (4) (203 SE2d 475) (1974). Thus, issues of fact remain as to whether appellees waived the financing contingency provision either before or after the date specified.

b. The contract provided that no modification of it was binding except by written agreement signed by the parties. Hence, appellees argue that the deadline for procurement of financing could not have been extended without compliance with the contract provision for modification. However, this provision would not preclude the waiver of the financing contingency or of its timely expiration by the conduct of appellees — the parties for whose benefit the contingency was included. *Bolton v. Barber,* 233 Ga. 646, 648 (212 SE2d 766) (1975). See also *Perry Dev. Corp.,* supra; *J. E. M. Enterprises v. Taco Pronto,* 145 Ga. App. 573 (1) (244 SE2d 253) (1978).

c. "The doctrine of estoppel is predicated upon a change of position to the hurt of one of the parties acting on the representations or conduct of the other." *Morgan v. Maddox,* 216 Ga. 816 (1)(d) (120 SE2d 183) (1961). "[I]n order for an equitable estoppel to arise, the party seeking such an estoppel must have been 'misled to his injury.'" *McFarland v. Beardsly,* 148 Ga. App. 645, 646 (2) (252 SE2d 72) (1979). In his affidavit appellant's president stated that he had "intentionally waited for the financing OK before doing the customizing work"; that much of the work had been completed by July 5, 1981, when appellees informed him the sale would not close; and that much of the customization had to be changed to prepare the house for later sale. Estoppel is usually an issue of fact, *Hall v. Rogers,* 225 Ga. 57, 58 (165 SE2d 829) (1969), and issues of material fact remain in the instant case as to whether appellees are estopped to rely on the expiration of the financing contingency as a basis for denying the validity of the contract.

d. Since appellant's claim for damages arises from either the asserted waiver or estoppel, or both, a question of fact likewise remains on the issue of damages. See *Dozier v. Matthews,* 136 Ga. App. 375 (221 SE2d 236) (1975). Thus, the trial court erred in granting summary judgment in favor of appellees.

*Judgment reversed. Quillian, P. J., Banke, Carley and Pope, JJ., concur. McMurray, P. J., concurs in the judgment only. Shulman, C. J., Deen, P. J., and Birdsong, J., dissent.*

DECIDED DECEMBER 5, 1983 —
REHEARING DENIED DECEMBER 20, 1983 —

*Timothy J. Sweeney, Perry A. Phillips,* for appellant.
*George S. Stern, Shiel G. Edlin,* for appellees.

BIRDSONG, Judge, dissenting.

Because I feel that the majority has both reached an improper result in light of existing Supreme Court precedent and has also misread and improperly overruled *Harrington v. Norris B. Strickland & Assoc.,* 161 Ga. App. 518 (289 SE2d 17), I must respectfully dissent from the holding in Division 1 and the judgment.

First, I disagree with the majority's construction of *Brack v. Brownlee,* 246 Ga. 818 (273 SE2d 390), in that I do not believe that *Brack* is applicable to this case. The precise holding in *Brack* can be found at p. 819 of that opinion: "It has frequently been held that the purchaser has an implied duty 'to diligently seek to have (the financing) contingency take place.' [Cit.] . . . This implied duty must be exercised in good faith. [Cit.] Therefore, the appellants could not avoid their obligations under the contract. Because of this implied duty a contract for the sale of real property *which is conditioned upon the purchaser's ability to obtain a loan* is not unenforceable for lack of mutuality of obligation." (Emphasis supplied.) Thus, *Brack* dealt only with a real estate contract contingent upon the purchaser's "ability to obtain a loan." While it may be argued that the Supreme Court intended for the holding of *Brack* on the issue of mutuality to extend to all real estate contract clauses contingent upon the purchasers' either "procuring" or "ability to procure" financing, this court is not in a position to extend that holding beyond the "ability to obtain" clauses. In *F&C Investment Co. v. Jones,* 210 Ga. 635, 636-637 (81 SE2d 828), the Supreme Court held: "If, in a contract for the sale of real estate, the initial payment of the purchase money is contingent upon an event which may or may not happen, at the pleasure of the buyer, the contract lacks mutuality. This deficiency as to mutuality is not remedied by a subsequent offer by the seller to perform an act which he was not bound in the contract to perform." While the reasoning of *Brack* and *F&C Investment Co.* may be in conflict, it is extremely important to note that *F&C Investment Co.* involved a clause contingent upon the purchaser's actually procuring the loan in question, rather than the purchaser's "ability to procure" the loan. The court in *F&C Investment Co.* was careful to note this distinction: "The fact that they were able to secure the loan, or that third parties were willing to make the loan, does not relieve that contract of the deficiency as to mutuality, for the reason that performance of the contingency rests solely upon the act of the

defendants in procuring the loan, and not upon their ability to procure the loan or the willingness of another, not a party to the contract, to make this loan." Id., p. 637. The clause in the present case is a "procuring," rather than an "ability to procure" clause and, therefore, the holding in Division 1 should be controlled by *F&C Investment Co.* rather than *Brack.*

While it may be argued that the "procure/ability to procure" dichotomy no longer exists in light of *Brack* and *Tuggle v. Wilson,* 248 Ga. 335 (282 SE2d 110), an analysis of the *Brack* decision fails to support that contention. In *Brack,* supra, p. 819, the Supreme Court expressly overruled the cases of *Potts v. Smith,* 134 Ga. App. 737 (215 SE2d 697), and *Alodex Corp. v. Brawner,* 134 Ga. App. 630 (215 SE2d 527). Both *Potts* and *Alodex* involved "ability to procure" contingency clauses. See *Potts,* supra, p. 737 (" 'This contract is contingent and subject to the purchaser being able to refinance. . . .' "); *Alodex,* supra, p. 630 ("It is hereby understood that the $5,000.00 earnest money described herein will be refunded to Purchaser if suitable financing cannot be arranged. . . .") The fact that the Supreme Court overruled only these two cases becomes particularly significant in view of the fact that *Brack* made no mention of *F&C Investment Co., Sheldon Simms Co. v. Wilder,* 108 Ga. App. 4 (131 SE2d 854), or any other prior decision dealing with a "procuring" clause as opposed to an "ability to procure" clause. Thus, *F&C Investment Co.* remains established Supreme Court precedent this court is powerless to overrule. " '(I)t is our duty to follow the precedents and the ancient landmarks of the law as declared by the Supreme Court.' " *Bickford v. Nolen,* 142 Ga. App. 256, 262 (235 SE2d 743). Although *F&C Investment Co.* may be criticized in light of *Brack* and ultimately may be overruled by the Supreme Court, such an action is the function of that court and is wholly without the province of this court. See, e. g., *Voyager Life Ins. Co. v. Estate of Frank G. Bagley,* 165 Ga. App. 212, 215 (299 SE2d 118) (Shulman, C. J., concurring specially), reversed sub nom, *Block v. Voyager Life Ins. Co.,* 251 Ga. 162 (303 SE2d 742).

The second error in Division 1 of the majority opinion is, in my opinion, equally important. As can be seen from a reading of *Harrington,* the contingency clause was based on the purchaser's "obtaining financing" and was thus controlled by *F&C Investment Co.* rather than *Brack.* However, *Harrington* differs from any of the previously cited cases in that the clause in that case specifically provided that the sale was contingent upon the purchaser's obtaining a certain amount of financing "from the Federal Land Bank of Columbia." Id., p. 518. The facts in *Harrington* showed without dispute that the purchaser was unable to obtain financing from the

specified source. Thus, irrespective of the viability of the "procuring/ability to procure" distinction, the holding in *Harrington* is sound. Certainly, nothing contained in *Brack* even hints that the parties to a real estate contract may not expressly make the contract contingent upon the purchaser's obtaining financing from a specified source or that the contract is not rendered unenforceable upon the failure of that specific contingency. The distinction between a clause containing a specified source of financing and a clause containing no specified source of financing is obvious and indisputable, and it is inconceivable that either this court or the Supreme Court should intimate that the failure of a contractually specified source of financing could be remedied by the ability of the purchaser to obtain financing from the seller or some other source. "Where a contract is unambiguous, it must be construed to mean what it says" (*Fox v. Southern Glassine Co.,* 130 Ga. App. 124 (202 SE2d 563)), and it must be enforced accordingly. Consequently, irrespective of any disagreement the majority may have concerning the effect of *Brack* on certain language in *Harrington,* it is clearly improper for this court to overrule *Harrington.*

For the foregoing reasons, I must respectfully dissent from Division 1 and the judgment of the majority opinion.

I am authorized to state that Chief Judge Shulman and Presiding Judge Deen join in this dissent.