### 69401. SMITHLOFF v. BENSON.
### 69402. AMERICAN NATIONAL BANK OF GADSDEN, ALABAMA et al. v. SMITHLOFF.
(328 SE2d 759)

BEASLEY, Judge.

This appeal and cross-appeal arise out of a real estate sales contract. They are joined for purposes of this opinion.

On November 12, 1981, appellant Smithloff executed a contract to purchase certain improved real property; the closing was to be two months later. Appellee Benson d/b/a Benson Realty Company executed the contract as broker and the now-deceased Bowman was the seller of the property. Pursuant to the contract, purchaser Smithloff deposited with Benson $55,000 in earnest money.

Smithloff planned alteration of the structure of the subject property for future use as a doctor's office and clinic, and because of this a special stipulation was added to the contract, relieving Smithloff's obligations thereunder and refunding to him the earnest money if he was unable to make necessary improvements for conversion of the property to the intended use.

The sale failed to close on the extended closing date in March, and after the seller denied a request for further extension, Smithloff asked for the return of his earnest money and was refused.

Purchaser Smithloff filed suit against seller Bowman and broker Benson, alleging that Benson breached the sales contract in refusing to return the earnest money and that Bowman tortiously interfered with Smithloff's contractual rights by instructing Benson not to refund the money. Bowman answered, denied the material allegations of the complaint, and asserted a counterclaim praying, among other things, for $55,000 liquidated damages. Benson also filed an answer, denied the substantive contentions, and filed a counterclaim for, inter alia, $55,000 commission if the contract was closed or 50% of this amount if the purchaser defaulted.

Subsequently Bowman passed away, and upon motion of Smithloff, the present executors of Bowman's estate were substituted as parties defendant in the action.

In August 1983, Smithloff moved for partial summary judgment as to Benson, which was denied. In January 1984, broker Benson

moved for summary judgment. Thereafter, Smithloff and Bowman's executors entered into a settlement and filed dismissals with prejudice as to Smithloff's claims against the Bowman estate and as to the estate's counterclaim against Smithloff. The estate executed a release of its claim to the earnest money and accrued interest being held by broker Benson and authorized him to disburse the money to Smithloff. Smithloff did not dismiss his claim against appellee Benson nor did Benson dismiss his counterclaim.

Smithloff then filed a motion for summary judgment as to the main claim against Benson and as to Benson's counterclaim.

On March 30, 1984, Benson filed a motion to vacate dismissals and for leave to file cross-claim. In response, the estate filed a special appearance and motion to dismiss based on a claim of improper jurisdiction. Benson filed an amendment to his proposed cross-claim and also filed an amendment to his still pending counterclaim.

By order of June 18, 1984, the trial court granted Benson's motion for summary judgment against Smithloff, thus adjudging him entitled to a commission, denied Smithloff's motion for summary judgment against Benson, thus depriving him of return of the earnest money and interest, granted Benson's motion to vacate dismissals of claims by the purchaser and sellers against each other and for leave to file a cross-claim against the seller's estate, and denied the estate's motion to dismiss the attempted cross-claim. Smithloff and the estate appealed. *Held*:

1. Appellant Smithloff contends that the court erred in finding that the contract contained no contingency relieving him from performance and for that reason granting Benson's motion for summary judgment on his claim for the broker's commission. We agree.

The sales contract contained Special Stipulation 5, which reads in pertinent part: "This contract is contingent upon Purchaser's ability to make such improvements as may be necessary for conversion of the property for use as a doctors office and clinic. Approval for such use by City of Atlanta Building and Fire Inspectors shall be a condition precedent to Purchaser's obligation hereunder. Upon acceptance of this contract, Purchaser shall move promptly to submit plans and specifications to appropriate city authorities for approval. In the event Purchaser has not obtained approval for such use by City of Atlanta Building and Fire Inspectors on or before the closing date of January 15, 1982, then this contract shall be null and void and all earnest money shall be promptly refunded to Purchaser . . . ."

The contract further provides that "Purchaser agrees that if Purchaser fails or refuses to perform any of Purchaser's covenants herein, Purchaser shall forthwith pay Broker the full commission, provided that Broker may first apply one-half of the Earnest Money to a payment of, but not to exceed, the full commission and may pay the bal-

ance thereof to Seller as liquidated damages of Seller, if Seller claims balance as Seller's liquidated damages in full settlement of any claim for damages . . . ."

Benson based his claim of entitlement to commission from Smithloff on the ground that Smithloff failed or refused to perform the provisions of Special Stipulation 5. Thus the propriety of the grant of summary judgment to Benson is dependent on an analysis of that stipulation, and of Smithloff's performance in relation to it.

It is clear that the stipulation contains a contingency, which if unsatisfied would relieve Smithloff of his obligation to further perform under the contract. What is less clear and crucial to the proper disposition of the parties' claims, is the substance or extent of the contingency. Does the language in the stipulation reflect that the parties contemplated massive renovation and enlargement of the existing structure, so that approval by the City of Atlanta Building and Fire Inspectors would be but the culmination of numerous factors comprising the contingency or did the contract contemplate minimal alteration of the existing structure so that the sum and substance of the contingency was the governmental approval or permit, or what?

This duplicity, indistinctness, and uncertainty of meaning or expression of the language in the stipulation gives rise to ambiguity in the contract. *Novelty Hat Mfg. Co. v. Wiseberg*, 126 Ga. 800 (55 SE 923) (1906). However, the construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains. *Interstate Fire Ins. Co. v. Nat. Indem. Co.*, 157 Ga. App. 516 (277 SE2d 802) (1981). Giving the words in the stipulation their usual and common signification, considering the language in the context of the entire contract and circumstances, and aware that the cardinal rule of construction is to ascertain the intention of the parties, we find the ambiguity remains unresolved, and therefore the issue is one for the jury. OCGA §§ 13-2-2 and 13-2-3; *Erquitt v. Solomon*, 135 Ga. App. 502, 503 (218 SE2d 172) (1975).

Here, the broker and the purchaser are available to supply extrinsic testimony of the surrounding circumstances and context, if necessary, in order to clarify the meaning of the language used as it was understood by the parties, and thus make plain their real and mutual intention, and in this case of ambiguous language, parol testimony may be admitted to explain it if it can. *Tanner v. Tinsley*, 152 Ga. App. 330 (262 SE2d 602) (1979).

Of course, " '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' Restatement, Second, Contracts, § 231." *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980). Accord OCGA § 11-1-203. Thus, purchaser Smithloff had an implicit duty to diligently and in good faith seek to

comply with all the terms of the contract, including the special stipulation. In the specific context of a financing contingency in a real estate sales contract, for example, we have held that the purchaser has an implied duty to diligently seek to have the contingency take place, and that this implied duty must be exercised in good faith. *Koets, Inc. v. Benveniste*, 169 Ga. App. 352, 354 (312 SE2d 846) (1983), affirmed 252 Ga. 520 (314 SE2d 912) (1984); see also *Brack v. Brownlee*, supra. The same applies here.

Consequently, even if we were able to conclude that the provision was clear and unambiguous or in any event capable of resolution as a matter of law, summary judgment to appellee Benson would still have been inappropriate, inasmuch as the material question of Smithloff's good faith or diligent attempt at compliance would remain for resolution by the trier of fact. See *Jones v. Quigley*, 169 Ga. App. 862, 865 (315 SE2d 59) (1984).

The trial court erred in granting Benson's motion for summary judgment.

2. As a second enumeration, Smithloff asserts that the court erred in denying his earlier motion for partial summary judgment.

Even though this motion was denied in a separate and earlier order of the court from which no application for interlocutory appeal was taken, we may at this time properly consider the propriety of the trial court's denial in that when a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by this court. *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294, 295 (271 SE2d 199) (1980).

In his motion for partial summary judgment, Smithloff maintained that the evidence was uncontradicted and therefore established as a matter of law, that he had made a good faith effort to obtain approval for his project.

For the reasons cited in Division 1 of this opinion, it would have also been improper to grant Smithloff's motion for partial summary judgment as the facts are in dispute, and therefore the trial court did not err in denying it.

3. Appellant Smithloff further contends that the trial court committed error in denying his later motion for summary judgment.

The basis for this motion was Smithloff's contention that Benson had made certain statements, in deposition and in pleading, regarding the return of the earnest money which would amount to binding admissions and therefore Benson would be estopped to recover in the action, and further that such statements amounted to an agreement to rescind the contract thereby waiving any claim by Benson to a commission under the contract.

First as to Smithloff's claim of estoppel, we are aware that such

conclusive presumptions of law are not generally favored and are best not resorted to, except in instances where it would be more unjust and more productive of evil to hear the truth than to forbear the investigation. OCGA § 24-4-24; *Patterson v. Collier*, 75 Ga. 419, 54 Am. R. 472 (1885); *Globe &c. Ins. Co. v. Atlantic &c. Shipping Co.*, 51 Ga. App. 904 (181 SE 310) (1935); *Hollins v. State*, 133 Ga. App. 183 (210 SE2d 354) (1974).

In order to create an estoppel as authorized by OCGA § 24-4-24, the evidence must show that the party relying on such estoppel acted on the conduct of the opposite party to his detriment. *Swift & Co. v. Hall*, 94 Ga. App. 239 (94 SE2d 145) (1956); *State Farm &c. Ins. Co. v. Penrow*, 142 Ga. App. 463 (236 SE2d 275) (1977). The evidence in this case did not conclusively show such detrimental reliance by Smithloff. Estoppel is a question for the jury unless it can be unequivocally established. *Calhoun v. Williamson*, 76 Ga. App. 91 (45 SE2d 87) (1947); *Eiberger v. West*, 247 Ga. 767 (281 SE2d 148) (1981). Also, since the whole doctrine of estoppel is a creature of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must have acted with good faith and reasonable diligence; otherwise no equity will arise in his favor. *Bachrodt Realty Corp. v. Walker*, 236 Ga. 696 (229 SE2d 455) (1976). As we have noted previously, Smithloff's good faith or diligence is a material question of fact which is proper for a jury to decide, so that there would also remain for determination by the trier of fact Smithloff's entitlement, if any, to a claim of benefit by estoppel.

Without offering the same in evidence, either party may avail himself of allegations or admissions made in the pleadings of the other, i.e., admissions *in judicio*. OCGA § 24-3-30. The statements regarding release of the escrow funds do not address the question of Benson's commission, are not inconsistent with the question of his entitlement to it, and cannot be regarded, as a matter of law, to constitute a waiver of commission by inference. There was no clear, unambiguous, and binding admission in this regard.

As to Smithloff's claim that Benson had waived any right which he might have had to obtain a commission or to retain the earnest money by ostensibly agreeing to distribute the earnest money in accordance with any court decision or settlement achieved by the parties, questions of the existence of waiver are usually questions to be settled by the trier of fact. *Jordan v. Flynt*, 240 Ga. 359 (240 SE2d 858) (1977). This would be most certainly the situation in the action at bar inasmuch as the right of Smithloff to treat the contract as rescinded would depend upon Smithloff's not having breached the contract himself. See *Martin v. Rollins, Inc.*, 138 Ga. App. 649, 651 (226 SE2d 771) (1976), affirmed 238 Ga. 119 (231 SE2d 751) (1977).

The trial court did not err in refusing to grant Smithloff's motion for summary judgment.

4. Appellant Smithloff and the estate contend that the trial court erred in granting Benson's motion to vacate dismissals and for leave to file cross-claim.

On February 29, 1984, appellant Smithloff, pursuant to OCGA § 9-11-41, filed a dismissal with prejudice as to his claim against the estate. This dismissal contained an express statement that Smithloff was not dismissing his claim against Benson. Also, on February 29, the estate filed a dismissal with prejudice of the counterclaim as pertaining to Smithloff.

Benson originally filed his counterclaim with his answer to the suit on April 21, 1982. The counterclaim prayed for judgment against Smithloff in the amount of $55,000 and expenses of litigation. On November 17, 1983, Benson filed an amendment to the counterclaim by substituting in lieu of the counterclaim a prayer for the full real estate commission of $55,000, for the complaint to be dismissed with all costs cast against Smithloff, and a demand for trial by jury as to the counterclaim. Benson's counterclaim was based upon the previously quoted (see Division 1, supra) contractual provision obligating Smithloff to pay Benson the full commission upon Smithloff's failure or refusal to perform any of the contractual covenants.

On May 31, 1984, three months after the objected-to voluntary dismissals were filed and prior to any court action on Benson's motion to vacate these dismissals and for leave to file cross-claim, Benson filed a second amendment to his counterclaim asserting a claim that Smithloff and the estate had intentionally, wilfully, and wrongfully conspired to deprive Benson of his commission. Benson's filing of this amendment to his counterclaim belies a belief that his counterclaim had been dismissed or adversely affected by the disputed voluntary dismissals so as to require that they be vacated.

Under OCGA § 9-11-41 (a), actions other than class actions (OCGA § 9-11-23) or those in which a receiver has been appointed (OCGA § 9-11-66) may be dismissed by the plaintiff without court order, by filing a written notice of dismissal at any time before verdict. If a counterclaim has been pleaded by a defendant prior to the service upon him of plaintiff's motion to dismiss, the action cannot be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication. Such statutory provision is equally applicable to the dismissal of counterclaims, cross-claims, or third-party claims. OCGA § 9-11-41.

In this case, the court erred in vacating the disputed voluntary dismissals. A counterclaim is not necessarily subject to dismissal because of dismissal of the main complaint. *Weems v. Weems*, 225 Ga. 19 (165 SE2d 733) (1969); *Employers Liab. Assurance Corp. v. Ber-*

*ryman,* 123 Ga. App. 71 (179 SE2d 646) (1970). The purpose of the counterclaim limitation on voluntary dismissals is to prevent a plaintiff from invoking the jurisdiction of the court and then withdrawing when the defendant seeks affirmative relief from the plaintiff. *Worthen v. Jones,* 240 Ga. 388 (240 SE2d 842) (1977); the intent is not to impede or bar the settlement of litigation. We see no reason why Smithloff or the estate should have been required to obtain court approval under OCGA § 9-11-41 since they sought to voluntarily dismiss only that portion of the litigation involving claims and counterclaims between themselves, and since Benson's amended counterclaim against Smithloff could have, and did, remain pending for resolution. See *Stanley v. Stanley,* 244 Ga. 417 (260 SE2d 328) (1979). Under these circumstances the trial court was without authority to vacate the voluntary dismissals and to reinstate those portions of the case. See *Bufford v. Farmers & Merchants Bank,* 110 Ga. App. 393 (138 SE2d 609) (1964).

In addition to granting the motion to vacate the dismissals, the trial court on June 18 granted Benson leave to file a cross-claim against the estate. On April 12, 1984, after the voluntary dismissals, Benson had filed a two-count cross-claim against the estate pursuant to OCGA §§ 9-11-13 and 9-11-15, alleging that the estate breached its fiduciary duty to Benson and intentionally, wilfully, and wantonly interfered with Benson's contractual rights by entering into settlement with Smithloff. On May 31, 1984, Benson amended this cross-claim to add a third count, which alleged intentional, wilful and wrongful conspiracy on the part of the estate in entering into the agreement, essentially the same allegations as in Benson's second amendment to his counterclaim against Smithloff.

OCGA § 9-11-13 (g) authorizes a party to file a cross-claim against a *co-party* arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. It does not authorize a cross-claim against one who is no longer a party to the action. See *Spivey v. Rogers,* 173 Ga. App. 233, (326 SE2d 227) (1984). The voluntary dismissals with prejudice filed on February 29, 1984, effectively removed the estate from this litigation, and inasmuch as the estate was no longer a party to the action, to allow Benson to advance claims by way of cross-claim under OCGA § 9-11-13 (g) was without authority. Benson had appropriate means of asserting his claims.

As we have noted, the essence of the proffered cross-claim was the allegation of tortious acts surrounding the settlement reached between the estate and Smithloff. If Benson could show that the estate would be liable to him in the event Benson was found to be liable under Smithloff's main claim against Benson, then Benson could have

availed himself of the liberally construed impleader provisions of OCGA § 9-11-14 (a), which permit, under certain circumstances, a defendant to bring in a third party. See *Hyde v. Klar*, 168 Ga. App. 64 (308 SE2d 190) (1983). Also, if Benson could show that without the presence of the estate, he could not obtain complete relief in the determination of his counterclaim against Smithloff, the court could have ordered that the estate be brought in as a defendant in counterclaim under the provisions of OCGA § 9-11-13 (h). None of this was done.

The trial court erred in both vacating the voluntary dismissals and in granting leave to file the cross-claim.

5. The estate cites as error the court's denial of its motion to dismiss.

The estate was no longer a party to the action for the purpose of asserting a cross-claim against it. For this reason, the motion to dismiss should have been granted. We do not reach questions of proper service and venue, had Benson sought to bring the estate back into the litigation under the proper statutory mechanisms we have described in Division 4 of this opinion.

*Judgment affirmed in part and reversed in part in Case No. 69401. Judgment reversed in Case No. 69402. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 14, 1985.

*Allan L. Galbraith*, for appellant (case no. 69401).
*Emory A. Schwall, John C. Mayoue*, for appellee.
*John C. Mayoue*, for appellants (case no. 69402).
*Emory A. Schwall, Allan L. Galbraith*, for appellee.