## A99A1928. PACIFIC GROVE HOLDING, LLC v. HARDY.
(532 SE2d 710)

MILLER, Judge.

Charles Hardy granted Pacific Grove Holding a 90-day option to purchase land in Paulding County in exchange for $25,000, to be held in escrow by Park West Realty. The stated option period expired September 13, 1998, without Pacific Grove giving Hardy written notice of its intent to exercise the option, and Hardy demanded that Park West disburse the $25,000 to him. Contending that the contractually specified contingency regarding access to sewer lines had not been met, Pacific Grove purported to terminate the option agreement on September 29, 1998, and demanded that the escrow money be refunded to it. Park West initiated this action for interpleader and, after tendering the $25,000 into the registry of the court, was released by consent order. Hardy and Pacific Grove answered the interpleader, and each cross-claimed for the escrow money. On cross-motions for summary judgment, the following, largely undisputed, facts were adduced.

Pacific Grove's agent contacted Park West and asked it to contact Hardy and negotiate an option agreement for Pacific Grove to purchase real property for which Hardy himself held an option to purchase. Pacific Grove forwarded to Park West a proposed option agreement, and when this was presented to Hardy, he made several changes to it. Specifically, Hardy rejected the optionee's right to an automatic extension (upon payment of an additional $25,000). Also, Hardy rejected language whereby he would warrant that water, sewer, and power lines sufficient to support a 200-unit multifamily project would be available at the property lines. Rather, Hardy proposed that the availability of these utilities be classified as contingencies to be met by the purchaser or grantee of the option.

After further negotiation, Pacific Grove drafted the agreement executed on June 15, 1998. In Paragraph 5, Hardy warranted only that he had good title to the property. Paragraph 6 provided: "During the Option Period, the following contingencies shall be met: a. Determine that water, sewer and power lines will prior to Closing, be available at the property lines. . . ." Paragraph 7 provided:

> If Grantee exercises the option . . . the sale shall be closed within thirty (30) days from the date of Grantee's notifying Grantor of the exercise of its option. . . . In the event Grantee fails to exercise its option, or having exercised its option, fails to close the purchase for any reason other than the failure of title on the part of the Grantor, or one or more contingencies are not met or Grantor's breach of some obligation of Grantor hereunder, then Grantee shall not be entitled to a refund of any part of the Option Money paid hereunder, and the retention thereof shall be Grantor's sole right and remedy. However, should Grantor refuse to perform, title to the Optioned Property be other than as represented herein, one or more contingencies is not met as specified herein or Grantor otherwise defaults hereunder, Grantee shall . . . be entitled to a refund of the Option Money . . . or may proceed with any other remedy available. . . .

And Paragraph 12 provided: "If Grantee elects to terminate this Option for any reason other than Grantor's default, failure of title as required herein or one or more contingencies are not met, Grantee shall forfeit the $25,000 Option Money."

One week after the parties executed this option agreement, the Paulding County Department of Public Works informed Pacific Grove that:

> We have reviewed the proposed site location for "The Pines

at Macland" along Hwy 120 and have determined there to be future sewer service available. A new outfall sewer has been designed with construction estimated to begin in the fall of 1998. The sewer is estimated to be completed and fully operational in the fall of 1999. . . . Sufficient sewer treatment capacity is currently available at the Paulding County Land Application System to support a 206-unit development in this area.

Subsequent letters (still within the option period) from the County to Pacific Grove recount Pacific Grove's offer to construct 1,617 feet of outfall sewer along the western boundary of the property in exchange for the County's providing sewer to the proposed development. As the end of the 90-day option period approached, Pacific Grove repeatedly assured Park West that Pacific Grove would purchase the property. After the express option period expired on September 13, 1998, without Pacific Grove exercising its option, Pacific Grove requested an extension. But Hardy was unwilling to grant an extension except for additional consideration and only after payment of the original $25,000. When informed that Park West intended to disburse the money to Hardy, Pacific Grove objected on the ground that Hardy had failed to provide sewer service to the property.

Pacific Grove maintained that the option agreement put the onus on Hardy to obtain appropriate sewer services to the property. Hardy purportedly agreed orally to extend the option period but never obtained a binding commitment from the County to install the sewer. According to Pacific Grove, its intended lender would not commit to finance the project. Part of the problem in obtaining sewer service is that Hardy had not given permission to cross the site of his personal residence in order to tap into an existing line.

The trial court concluded that the option period expired without Pacific Grove exercising the option or terminating the agreement; that the option was not exercised by Pacific Grove because the contingency of the sewer line had not been met; that the indefinite oral extension was ineffective due to the lack of certainty; and that the agreement did not put any performance obligation on Hardy to make the sewer line available but imposed the duty on Pacific Grove to determine the availability of sewer service so it could timely exercise its right to terminate due to the unmet contingency. Since Pacific Grove neither exercised its option nor terminated the agreement during the 90-day option period, the trial court ruled that Pacific Grove was not entitled to a refund of the $25,000 option money and awarded it to Hardy. Pacific Grove appeals from the order denying its motion for summary judgment and granting that of Hardy.

1. The first enumeration contends the trial court erred in holding that the alleged oral agreement with Hardy to extend the option period was unenforceable and so did not estop Hardy from claiming the option period expired without Pacific Grove either exercising its option or timely terminating the agreement. While there is no evidence to support an estoppel, we nevertheless conclude a factual question exists regarding a waiver.

(a) Waiver and estoppel are often similar but not identical.[1]

> In the case of a waiver the original contract remains; the [promised performance or, as here, the optionee's election] is due; the [grantor] merely waives strict performance as to time, so as to prevent him from declaring a forfeiture on account of a past failure. Generally he may still demand and require compliance with the contract, upon reasonable notice. In the case of an estoppel in pais, by reason of his conduct or acts, he will not be allowed to claim that there has been a failure in compliance by the other party, so as to relieve him.[2]

In this case, the evidence of a waiver is that Pacific Grove informed Hardy that obtaining the sewer service was Hardy's responsibility and that Hardy orally agreed to an extension, as requested by Pacific Grove. This is contradicted by proof that Hardy would agree to an extension only upon release of the original $25,000 to him and payment of additional consideration. Viewed in the light most favorable to Pacific Grove, there is no conduct by Hardy that made a timely election impossible. Certainly there is no proof that Hardy, in response to any specific proposal, refused the consent needed to make sewer service available to the option property.[3] The root cause of the delay is the uncertainty of the availability of sewer service. Pacific Grove was, in our view, under the erroneous impression that the option agreement made Hardy responsible for delivering sewer service to the property line, at his own expense. But that erroneous impression is not any conduct by Hardy on which Pacific Grove reasonably relied to its detriment so as to amount to an estoppel. Pacific Grove's inaction was premised on its own mistaken assumptions.

---

[1] *Studdard v. Hawkins*, 139 Ga. 743, 747-748 (2), (3) (78 SE 116) (1913).

[2] Id.

[3] Georgia contract law imposes on both parties an implied duty of good faith in carrying out the mutual promises of their contract, so that "whenever the co-operation of the promisee is necessary for the performance of the promise, there is a condition implied that the co-operation will be given." (Citations and punctuation omitted.) *Southern Business Machines &c. v. Norwest Financial Leasing*, 194 Ga. App. 253, 256 (2) (390 SE2d 402) (1990).

(b) An option to purchase land falls within that portion of the Statute of Frauds[4] pertaining to "[a]ny contract for [the] sale of lands, or any interest in, or concerning lands."[5] Exercise of the option must be in writing[6] and is effective only upon receipt.[7] But even though the original option agreement here recites it is the "entire agreement" regarding the property "and may only be amended or modified in writing signed by the parties," this would not prevent a subsequent parol waiver of the time for performance by Hardy.[8] Whether any such waiver took place, and under what terms,[9] is an issue for the trier of fact.[10]

Viewed in the light most favorable to Pacific Grove, Hardy's alleged oral extension of the option period would amount to a waiver of strict performance. The trial court's reasoning that Pacific Grove failed to allege and prove a definite modification contract is not germane to the relevant issue of a waiver. Because the evidence of an oral waiver of strict adherence to the 90-day option period is conflicting, the trial court erred in granting summary judgment to Hardy unless other circumstances ultimately render this factual issue immaterial.[11]

2. Because of the singular one-sidedness of an option contract in creating, for a stated duration, an irrevocable offer of the optionor, the law requires that the optionee perform all of its obligations under that contract with particular timeliness.[12] Assuming Hardy waived the strict time for performance, the question remains whether Pacific

---

[4] *Neely v. Sheppard*, 185 Ga. 771, 775 (1) (196 SE 452) (1938).

[5] OCGA § 13-5-30 (4).

[6] *Anthony v. Ausburn*, 254 Ga. 472, 473 (330 SE2d 724) (1985).

[7] *Musgrove v. Long*, 248 Ga. 902 (287 SE2d 23) (1982). Consequently, Pacific Grove's second enumeration, that the telephone conversation between its agent and Hardy amounted to an oral termination, is without merit. Pacific Grove does not argue that Hardy also waived the requirement of a writing.

[8] *Bolton v. Barber*, 233 Ga. 646, 648 (2) (212 SE2d 766) (1975). See also *Bowden v. Mews Dev. Corp.*, 247 Ga. 546, 547 (2) (277 SE2d 653) (1981) (time is generally not of the essence under OCGA § 13-2-2 (9), but an option contract is peculiarly a contract of which time is of the essence).

[9] Pacific Grove's evidence is unclear whether Hardy waived strict timely performance for any and all of Pacific Grove's options (such as termination) or whether he merely waived the time for exercising the option to purchase.

[10] *English v. Muller*, 270 Ga. 876 (1) (514 SE2d 194) (1999).

[11] The trial court correctly denied Pacific Grove's motion for summary judgment because, if there is no valid waiver coupled with a timely written response electing the option or terminating the agreement, the option agreement "expired by its own terms" at midnight on September 13, 1998, more than two weeks before Pacific Grove purportedly terminated the agreement in writing. See *TST, Ltd. v. Houston*, 256 Ga. 679, 680 (2) (353 SE2d 26) (1987). Consequently, Pacific Grove's third enumeration is without merit. Thus, a termination can take place only during the existence of the option period, because in the absence of written notice of the optionee's intent, timely received by the optionor, the option expires of its own terms.

[12] Id.

Grove's September 29 notice of termination due to an (allegedly) unmet sewer service contingency is a justified termination, requiring the return of the escrow money to it under the option. The trial court concluded that Pacific Grove failed to exercise its option because the sewer line contingency had not been met and that it was undisputed that the contingency had not been met.

There is, in our view, considerable doubt whether the sewer service contingency remained unmet, since the County opined that adequate sewer service already was available and promised that sewer service would be available to the proposed development if Pacific Grove built 1,617 feet of outfall sewer along the western boundary. Moreover, if the responsibility for making certain the sewer service contingency "shall be met" was Pacific Grove's as opposed to Hardy's, then the failure of the contingency due to the responsible party's lassitude or refusal to perform would not authorize the return of the option money to it.

Under Georgia law, "[t]he effect of a contract for an option to purchase land is to bind the owner of the property to hold it in the same state and condition in which it existed at the time the contract was made."[13]

The trial court here correctly concluded that the agreement does not expressly make it Hardy's financial responsibility to make sewer service available to the property line during the option period. Rather, the final document is silent on which party "shall" be required to meet the contingencies. If there is any doubt about who bore that responsibility in this instance, the agreement will be construed against Pacific Grove as the drafter, under OCGA § 13-2-2 (5).[14] The sewer service contingency was for the benefit of Pacific Grove because it was essential to the envisioned apartment project. Georgia law imposes on purchasers the implied duty to exercise due diligence and good faith in seeking to make a contingency take place.[15]

Neither party's motion or evidence addresses Pacific Grove's due diligence and good faith in seeking to accomplish the sewer service contingency. In our view, the conclusory testimony that Pacific Grove's intended "lender would not commit . . . because of a lack of commitment, or existence, of appropriate sewer capacity" is contra-

---

[13] *Mattox v. West*, 194 Ga. 310, 315 (1) (21 SE2d 428) (1942), citing *Varn Turpentine &c. Co. v. Allen & Newton*, 38 Ga. App. 408 (144 SE 47) (1928).

[14] *Crook v. West*, 196 Ga. App. 4, 5 (395 SE2d 260) (1990).

[15] *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772, 774 (1) (364 SE2d 556) (1988) (parties have implied duty to exercise good faith in accomplishing conditions precedent); *Brack v. Brownlee*, 246 Ga. 818, 819-820 (273 SE2d 390) (1980) (financing contingency); *Giallanza Realty v. Rosebud Properties*, 209 Ga. App. 571, 572 (2) (434 SE2d 130) (1993) (physical precedent only) (financing contingency).

dicted by the County's willingness to assist. Consequently, the evidence does not demand a finding that the sewer service contingency failed despite Pacific Grove's due diligence and good faith.[16] The trial court correctly denied Pacific Grove's motion for summary judgment on this point. Although Hardy's motion asserted the sewer service was in fact available, this remains the subject of conflicting inferences. Certainly, Hardy does not address whether Pacific Grove was entitled to a refund, if the sewer service was unavailable *despite* the exercise of due diligence and good faith. In our view, genuine issues of material fact as to waiver and fulfillment of the sewer service contingency remain for resolution, and so the grant of Hardy's motion for summary judgment was in error.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 27, 2000.

*Shapiro, Fussell, Wedge, Smotherman, Martin & Price, Nicholas P. Papleacos,* for appellant.

*Talley & Darden, Jeffrey B. Talley, Charles L. Davis, Jr.,* for appellee.

---

[16] Compare *Koets, Inc. v. Benveniste,* 169 Ga. App. 352, 354 (2) (312 SE2d 846) (1983), aff'd sub nom. *Benveniste v. Koets, Inc.,* 252 Ga. 520 (314 SE2d 912) (1984) (purchaser gave uncontroverted evidence of his unsuccessful efforts to obtain swing loans or permanent financing from three lenders, in attempt to accomplish a financing contingency).