800 P.2d 94

**Teresa Ann ROHR, Plaintiff–Appellant,**

v.

**William Michael ROHR,
Defendant–Respondent.**

No. 17496.

Court of Appeals of Idaho.

Dec. 4, 1989.

Review Granted Feb. 16, 1990.

Affirmed as modified and remanded.

John B. Kugler, Pocatello, for plaintiff-appellant.

Gregory C. May, Pocatello, for defendant-respondent.

HART, Judge Pro Tem.

Teresa Rohr appeals from a decision of the district court, upholding a magistrate's order which not only dismissed William Rohr's petition for modification of the couple's divorce decree, but also, in effect, denied a "request for affirmative relief" filed by Teresa. Teresa also challenges the district court's affirmance of orders denying attorney fees and disposing of contempt motions filed by both parties.

Teresa raises three issues on appeal. First, she contends that the magistrate erred in dismissing William's modification petition without considering her claim for affirmative relief. Second, she asserts that the magistrate abused his discretion by denying her motion requesting attorney fees for defending against William's modification petition. Finally, she submits that William should have been held in contempt for failure to pay all child support due and for improperly claiming an income tax dependency exemption for the couple's minor child. For the reasons explained below, we affirm the district court's decision denying Teresa's request for attorney fees. We affirm, as modified, that portion of the district court's decision as it relates to the magistrate's dismissal of William's petition, and that portion of the district court's decision granting William the dependency exemption. We remand this case for entry of an order consistent with our opinion.

The facts of this case are as follows. Teresa and William were divorced in July, 1986. As part of the divorce decree, Teresa was awarded physical custody of the couple's minor child and William received visitation rights. William was ordered to pay child support and to maintain health and life insurance policies for the benefit of the child. The divorce decree stated that, in the event William remained current on his child support obligations, he was entitled to claim a federal income tax dependency exemption for the child.

In February, 1987, William filed a petition for modification of the divorce decree (petition). William subsequently filed a contempt motion against Teresa, asking the magistrate to enforce his visitation rights to the couple's child, and requesting that the magistrate enjoin Teresa from claiming the dependency exemption. Teresa then filed a motion requesting attorney fees for her expenses in defending against William's petition. A hearing on Teresa's motion for attorney fees was held on June 8, 1987, before the magistrate (first hearing). At that time, William made an oral motion to dismiss his petition. Later that day, Teresa filed a "response" to William's petition containing a "request for affirmative relief"—an increase in child support and a modification of the divorce decree so that she and not William could claim the dependency exemption. Teresa subsequently filed a contempt motion, seeking unpaid child support from William. Teresa's motion for attorney fees was denied. The magistrate subsequently granted William's motion to dismiss his modification petition (first order).

Both parties' contempt motions were heard by the magistrate in July, 1987 (second hearing). At the hearing, the magistrate refused to entertain Teresa's argument on her claims for increased child support and the dependency exemption. The magistrate later entered separate orders on each of the parties' contempt motions. With regard to William's contempt motion, the magistrate found that Teresa had failed to make the couple's child available for visitation. However, the magistrate did not hold Teresa in contempt for her actions. The magistrate also found that Teresa was not entitled to claim the dependency exemption for the couple's minor child, and that she was liable for any tax assessment William was required to pay as a result of Teresa claiming the exemption. With regard to Teresa's contempt motion, the magistrate concluded that William was not delinquent with his child support payments. For purposes of this appeal, the magistrate's written conclusions regarding both of the parties' contempt motions will be collectively referred to as the second order.

Teresa filed a timely appeal to the district court, which upheld the magistrate's orders. This appeal followed.

# I

## STANDARD OF REVIEW

Preliminarily, we note our standard of review of the district court's decision. On an appeal from a district court reviewing a magistrate's findings and conclusions, we examine the record of the magistrate's decision with due regard for, but independently of, the district court's intermediate appellate review. *Cole v. Kunzler*, 115 Idaho 552, 768 P.2d 815 (Ct.App.1989). Findings of fact made by the magistrate will not be disturbed on appeal where they are supported by substantial and competent, though conflicting evidence. *Salazar v. Tilley*, 110 Idaho 584, 716 P.2d 1356 (Ct.App.1986). However, as to questions of law we will exercise free review. Depending upon our analysis, we will either affirm or reverse the district court accordingly. *Matter of the Estate of Bradley*, 107 Idaho 860, 693 P.2d 1062 (Ct.App.1984).

# II

## DISMISSAL OF MODIFICATION PETITION

We first address the magistrate's dismissal of William's petition for modification of the divorce decree. Teresa submits that the magistrate erred in dismissing William's petition, thus denying her an opportunity to argue her affirmative claims for increased child support and the dependency exemption as raised in her responsive pleading. Specifically, Teresa asserts that the magistrate was without jurisdiction to dismiss William's petition because William had failed to file a written motion for voluntary dismissal pursuant to I.R.C.P. 41(a)(1). Teresa contends that, because William's petition was not properly dismissed by the court, the magistrate should have considered her request for affirmative relief. Teresa maintains that the magistrate's failure to consider her claim resulted in an abridgment of her constitutional right to due process.

Based upon our review of the record, we hold that the magistrate properly dismissed William's petition pursuant to the discretionary authority prescribed under I.R.C.P.

41(a)(2), rather than as a matter of William's right to a dismissal under I.R.C.P. 41(a)(1). However, we hold further that the magistrate's order did not adequately address the disposition of Teresa's request for affirmative relief, and therefore this case must be remanded to the district court for a determination as to whether her claims survived the court's dismissal of William's petition. In support of our conclusions, we note the following. Prior to adoption of the Idaho Rules of Civil Procedure, a plaintiff could—any time before trial—dismiss his or her action provided that the defendant had not filed a counterclaim or sought affirmative relief in his or her answer. *See John Hoene Implement, Inc. v. Peters*, 80 Idaho 160, 327 P.2d 362 (1958) (interpreting I.C. § 10–705, providing for dismissal or nonsuit of an action); *Spencer v. Ensign*, 33 Idaho 577, 196 P. 668 (1921) (interpreting C.S. § 6830, forerunner of I.C. § 10–705). In *Spencer*, the Idaho Supreme Court held that dismissal could be accomplished by oral motion in open court, noting that once such a motion is seasonably made, the court has no alternative but to dismiss the action. 33 Idaho at 581, 196 P. at 670.

Adoption of I.R.C.P. 41(a)(1) and 41(a)(2) (hereinafter Rules), however, has altered the practice of obtaining a voluntary dismissal. The Idaho Rules, which are almost identical to the corresponding federal rule, define three ways to dismiss an action. The first and second methods, covered by Rule 41(a)(1), provide for dismissal by notice or by stipulation of the parties. Rule 41(a)(2) provides for dismissal by order of the court. Generally, voluntary dismissal under Rule 41(a)(1) is a matter of right; the plaintiff need not obtain the court's consent to do so. *See* 9 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2363 (1971) (hereinafter WRIGHT & MILLER). However, Rule 41(a)(1) does require the plaintiff to *file notice* of the dismissal. Filing connotes the delivery of an instrument or writing to the clerk or proper official for the purpose of being kept on file by him as a matter of reference or record. BLACK'S LAW DIC-

TIONARY 566 (5th Ed.1979); *see City of Overland Park v. Nikias,* 209 Kan. 643, 498 P.2d 56 (1972). As we noted above, William failed to file such a notice, but instead made an oral motion in open court. Therefore, Rule 41(a)(1) is inapplicable in this case.

Our review of Teresa's claim does not end here. Rule 41(a)(2) provides for dismissal by court *order,* upon such terms and conditions as the court deems proper. Unlike Rule 41(a)(1), a motion to dismiss under this rule is not a matter of right, but is discretionary with the trial court *both* as to whether a dismissal should be allowed, as well as to the terms and conditions to be imposed, if allowed. *Adney v. Mississippi Lime Company of Missouri,* 241 F.2d 43 (7th Cir.1957); *see* 5 MOORE'S FEDERAL PRACTICE ¶ 41.05[1] (2d ed. 1988) (hereinafter MOORE). The purpose for the court's discretionary authority under this rule is to insure that the court pays due regard to the interests of both the plaintiff and defendant; dismissal of the plaintiff's action must not unfairly jeopardize the defendant's interests. *See* MOORE at ¶ 41.05[1]; *Smithloff v. Benson,* 173 Ga. App. 870, 328 S.E.2d 759 (1985). Furthermore, a counterclaim is not necessarily subject to dismissal because of dismissal of the plaintiff's action. *Smithloff v. Benson, supra.* Rule 41(a)(2) further states that if the defendant files a counterclaim *prior* to service upon him or her of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. *See* MOORE ¶ 41.09; *United States v. Professional Air Traffic Controllers Organization,* 449 F.2d 1299 (3d Cir.1971). Appellate courts which have addressed application of this rule generally follow the principle that dismissal pursuant to Rule 41(a)(2) should be allowed unless the defendant will suffer some legal prejudice, other than the prospect of a second lawsuit. *Hamilton v. Firestone Tire & Rubber Company, Inc.,* 679 F.2d 143 (9th Cir.1982); WRIGHT & MILLER, § 2364. Unless otherwise specified in the court's order, voluntary dismissal under this rule is without

prejudice. MOORE ¶ 41.10. The prevailing view, which we adopt today, is that such a motion is addressed to the sound discretion of the trial court; it will not be overturned on appeal absent an abuse of discretion. *See Hamilton v. Firestone Tire & Rubber Company, Inc., supra.*

In the present case, we conclude that the magistrate's treatment of William's motion to dismiss his petition indicates that he intended to consider the request pursuant to his discretionary authority under Rule 41(a)(2). Our review of the transcript of the first hearing reveals that William made an oral motion in open court to dismiss his petition. The magistrate responded to William's request by saying "all right ...," a statement which we find ambiguous because it could be construed either as a mere acknowledgement of William's motion or as a ruling. Nevertheless, after William made his motion the magistrate afforded Teresa an opportunity to respond. The magistrate subsequently took William's motion under advisement, apparently to consider the countervailing arguments raised by the parties. The magistrate reached his decision to dismiss William's petition several days later, presumably considering Teresa's subsequent request for affirmative relief in his deliberations. The magistrate then issued an order dismissing William's petition without prejudice.

Based upon our review of the record, we see no abuse of discretion in the magistrate's decision to dismiss William's petition. Contrary to Teresa's claims, William moved for dismissal before Teresa had spent a considerable amount of time and money in defense of the action. Likewise, Teresa lost no legal rights in the process; the magistrate's dismissal of William's petition did not prevent Teresa from filing a subsequent motion to modify the divorce decree asking for the same affirmative relief that she sought in her response to William's petition. Finally, we note that dismissal of William's petition was not barred as a matter of law by Teresa's responsive pleading seeking affirmative re-

lief. Although Rule 41(a)(2) mandates that a plaintiff's action may not be dismissed unless the defendant's counterclaim can remain pending for independent adjudication, this rule applies *only* where the counterclaim has been filed *prior* to the plaintiff's service of notice of his or her motion to dismiss. I.R.C.P. 41(a)(2). In this case, Teresa received notice of William's intention to dismiss his action at the first hearing. Her responsive pleading did not meet the prior filing requirement specified in the Rule. *See Cooper v. Cooper*, 194 So.2d 278 (Fla.App.1967) ("motion for affirmative relief" is a counterclaim for purposes of the Florida Rule dealing with dismissal by court order).

■ What we do find troubling with the court's order, however, is the fact that it does not specifically address what action the court took on Teresa's request for affirmative relief. The order states only that William's petition "is dismissed without prejudice." The order does not state whether the magistrate intended to dismiss Teresa's claim, or whether he retained jurisdiction over Teresa's claim for later review. Our review of the record before us does not indicate which course of action the magistrate chose. We therefore remand this case to the district court to enter an order instructing the magistrate—or his successor in office, the original magistrate having retired—to determine whether to dismiss Teresa's claim with a reasonable explanation, or to address the claim on its merits. The district court's order upholding the magistrate's dismissal of William's petition is therefore affirmed as modified.

### III

### ATTORNEY FEES

■ Next, we address Teresa's claim for attorney fees. Teresa contends that, because she had insufficient funds to defend against William's petition, she should have been awarded attorney fees by the magis-

trate. *See* I.C. §§ 32–704, 32–705. We disagree. The award of attorney fees to the defendant pursuant to a plaintiff's dismissal of his or her action is discretionary with the trial court; we will not disturb the magistrate's decision unless an abuse of discretion has occurred. *See John Evans Sons, Inc. v. Majik–Ironers, Inc.*, 95 F.R.D. 186 (E.D.Pa.1982); *see also Bailey v. Bailey*, 107 Idaho 324, 689 P.2d 216 (Ct.App.1984) (award of attorney fees in a divorce proceeding is discretionary). In this case, the magistrate failed to state his reasons for denying Teresa's request for attorney fees.

Generally, such an omission would require us to remand this case back to the magistrate for an explanation of why the request was denied. We need not take such action, however, because it is obvious from the record that the magistrate denied Teresa's request because William dismissed his petition.[1] Furthermore, Teresa's request was primarily for fees in anticipation of defending against William's petition. To the extent that her request was for future fees, the need was abated by William's voluntary dismissal of his petition. To the extent that the fee request was for preparation of work already done, Teresa's counsel made no showing in the record of the work performed to the date of the hearing nor fees incurred. We therefore affirm the district court's decision upholding the magistrate's denial of Teresa's request for attorney fees in defense of William's petition.

### IV

### DEPENDENCY TAX EXEMPTION

Finally, we address Teresa's assertion that the magistrate erred when he concluded that William was entitled to claim the dependency tax exemption for the couple's child. Teresa raises two reasons in support of her argument. First she submits that, under federal law, only a custodial parent may claim the exemption. I.R.C. § 152(e)

---

**1.** The magistrate's order denying Teresa attorney fees was entered (June 10, 1987) several days before the magistrate's dismissal of William's petition (June 18, 1987). However, Wil-

liam made his motion at the first hearing (June 8, 1987), two days *before* the magistrate denied Teresa's attorney fee request.

(1988).[2] Second, Teresa asserts that, even if William is entitled to the dependency tax exemption under federal law, he has failed to make timely payments of child support, thus negating his entitlement to the exemption. Because Teresa's claims raise independent questions for our review, we will address each in turn.

## A.

### FEDERAL LAW

■ Teresa first urges us to conclude that I.R.C. § 152(e) precludes a divorce court from allocating the dependency exemption to a noncustodial parent. Teresa submits that only she, as the custodial parent, can claim or waive this exemption. Teresa raises a question of first impression for this court; at issue is whether a divorce court may allocate the dependency exemption, pursuant to I.R.C. § 152(e), to a noncustodial parent without the custodial parent's approval? We hold, as a matter of law, that a divorce court may make such an allocation.

Prior to 1985, divorce courts could allocate a dependency exemption to either the custodial or noncustodial parent. *See, e.g., Morphew v. Morphew,* 419 N.E.2d 770 (Ind. App.1981). However, in 1984, enactment of an amendment to I.R.C. § 152, occasioned by the Tax Reform Act of 1984, P.L. No. 98–369, § 423(a), 98 Stat. 494, 799 (1984), produced significant changes in the standards for allocation of the dependency exemption. Under that amendment,[3] only the custodial parent is entitled to claim the dependency exemption, subject to three exceptions: cases involving multiple-support agreements, I.R.C. § 152(e)(3); cases involving "qualified pre–1985 instruments," I.R.C. § 152(e)(4); and the exception applicable in the present situation, where the custodial parent waives the dependency exemption by written waiver. I.R.C. § 152(e)(2).[4] The custodial parent may waive the dependency exemption on a yearly basis, for a number of specified years, or for all future years. 26 C.F.R. § 1.152–4T (1988). Congress' purpose for amending the statute was to resolve factual disputes between divorced parents over the issue of who could claim the dependency exemption.[5]

**2.** 26 U.S.C.A. § 152(e) (West 1988).

**3.** The amended statute, effective after December 31, 1984, now provides, in pertinent part:

(1) **Custodial parent gets exemption.**—Except as otherwise provided in this subsection, if—

(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

(2) **Exception where custodial parent releases claim to exemption for the year.**—A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

**4.** In order to shift the dependency exemption to the noncustodial parent, the custodial parent must sign a written waiver foregoing the exemption, and the noncustodial parent must attach this waiver to his or her income tax return for the taxable year. Internal Revenue Service Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, has been provided by the IRS for this purpose. *See* 26 C.F.R. § 1.152–4T (1988).

**5.** *See,* H.R.Rep. No. 98–432, part II, 98 Cong., 2d Sess. 3 (1984) (Legislative History of the Deficit Reduction Act, P.L. 98–369), reprinted in 1984 *U.S.Code Cong. & Ad.News,* 697, 1140 (hereinafter *Legislative History* ). The report states:

The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue

Thus, the new law has clarified the question of when each parent may claim the exemption, and in so doing it has undercut the authority of judges simply to award the exemption, as the magistrate did here. However, it has left unanswered the question of whether a divorce court can indirectly accomplish the same thing by directing the custodial parent to execute a waiver. Several appellate courts have concluded that the amendment divests divorce courts of this authority. *McKenzie v. Kinsey*, 532 So.2d 98 (Fla.App.1988); *Lorenz v. Lorenz*, 166 Mich.App. 58, 419 N.W.2d 770 (1988); *Hughes v. Hughes*, 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988); *Gleason v. Michlitsch*, 82 Or.App. 688, 728 P.2d 965, 967 n. 6 (1986); *Brandriet v. Larsen*, 442 N.W.2d 455 (S.Dak.1989); *Davis v. Fair*, 707 S.W.2d 711 (Tex.App.1986). For the most part, these appellate courts have reasoned that, other than the three enumerated exceptions provided for in I.R.C. § 152(e), there is no explicit authorization in the amendment for a divorce court to allocate the dependency exemption. *See Brandriet v. Larsen, supra.*

In contrast, appellate courts from other jurisdictions have concluded that, notwithstanding the amendment, a divorce court still has authority to allocate a dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver. *Lincoln v. Lincoln*, 155 Ariz. 272, 746 P.2d 13 (App.1987); *In re Marriage of Einhorn*, 178 Ill.App.3d 212, 127 Ill.Dec. 411, 533 N.E.2d 29 (1988); *Fudenberg v. Molstad*, 390 N.W.2d 19 (Minn.App.1986); *Fleck v. Fleck*, 427 N.W.2d 355 (N.Dak.1988); *Cross v. Cross*, 363 S.E.2d 449 (W.Va.1987); *Pergolski v. Pergolski*, 143 Wis.2d 166, 420 N.W.2d 414 (App.1988). Following the lead of the Minnesota Court of Appeals in *Fudenberg v. Molstad, supra*, these courts generally agree that, regardless of the amendment's restrictive language, state divorce courts retain the

equitable authority to direct execution of a waiver by the custodial parent where one is so required. *Cross v. Cross*, 363 S.E.2d at 458. In reaching this conclusion, there is a consensus among these appellate courts that judicial allocation of the dependency exemption does not interfere with the amendment's purpose, namely, to rid the Internal Revenue Service of the burden of deciding who may claim the exemption. As noted in *Cross v. Cross, supra*, what Congress sought to achieve in amending I.R.C. § 152(e) was certainty in the allocation of the dependency exemption for federal tax administration purposes; nothing in the amendment precludes a domestic court from requiring a custodial parent to execute such a waiver. *Id.* at 457.

We agree with this reasoning. In this state, the dependency exemption has traditionally been treated as a valuable right which can be allocated, like other rights, by the divorce court. In many cases, the parties themselves will allocate the exemption pursuant to the terms of their separate agreement. However, we find nothing in the wording of the amendment nor in the legislative history which expressly prohibits a divorce court from directing allocation of the dependency exemption to the noncustodial parent; the amendment itself contains no requirement that the waiver be voluntarily signed, and likewise, the amendment does not prohibit a divorce court from directing the custodial parent to sign such a waiver. *In re Marriage of Einhorn*, 127 Ill.Dec. at 419, 533 N.E.2d at 37. If Congress had intended to prohibit divorce courts from allocating the exemption, it could have stated so in the amendment. Furthermore, we believe that divorce courts are in a much better position than the IRS to ensure efficient enforcement of child support orders directly linked to allocation of the dependency exemption. If a custodial parent who executes a waiver

Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at

stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

finds later that he or she has not received the child support payments which the noncustodial spouse was obligated to make, then the custodial spouse may go to court and obtain an order or judgment compelling the noncustodial spouse to pay the value of the lost exemption.[6] We therefore hold that, in divorce proceedings, a divorce court has discretion to allocate the income tax dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver of the exemption under I.R.C. § 152(e).

■ In so holding, we intimate no view that directing a waiver is the *only* permissible means of assuring that the proper party ultimately receives the economic benefit of the tax exemption. Another method, recognized by the South Dakota Supreme Court in *Brandriet v. Larsen, supra,* is to adjust the child support itself to reflect the benefit realized by the party claiming the exemption. This approach is consistent with I.C. § 32–706(A)(6), which currently allows the court in fixing the level of support to consider the "actual tax benefit recognized by the party claiming the federal tax exemption." Although it may be debated whether child support levels should be fixed by reference to factors other than need and ability to pay, it is permissible under federal law and the Idaho statute to take the value of the exemption into account, thereby indirectly allocating its economic value between the parties.

Consequently, in the present case, we find no error on the part of the magistrate in ordering allocation of the dependency exemption to William so long as it is accomplished in a manner consistent with the waiver mechanism created by federal law. We remand this case so that the divorce decree may be amended accordingly. If the magistrate elects to accomplish the allocation by directing a waiver of the exemption, and if William fails to fully pay his child support obligation in a given year, Teresa may petition the court for an order

compelling William to reimburse her for the value of the lost exemption during that year.

## B.

### PROOF OF COMPLIANCE

■ Finally, Teresa claims that the magistrate erroneously concluded that William was current with his child support payments and was therefore entitled to the dependency exemption. Teresa submits that, contrary to the magistrate's finding, William did not make timely payments of the full amount of his child support obligation in October or December, 1986, and he was therefore precluded from claiming the dependency exemption for the 1986 tax year. On appeal, the district judge affirmed the magistrate's order.

Although Teresa raises a question appropriate for appellate review, we cannot decide it on the record presented. Teresa has failed to provide this court with a transcript of the contempt motion hearing. Without this transcript, we are unable to ascertain whether the evidence relied upon by the magistrate was sufficient to support his finding that William had made his payments. Because it is the appellant's burden to present a record sufficient to evaluate a claim of error, we are constrained to let stand the district court's decision upholding the magistrate's determination for the 1986 tax year. Therefore, pursuant to the magistrate's second order, Teresa is liable for any tax assessment that William was required to pay for tax year 1986 as a result of Teresa claiming the dependency exemption.

## V

### CONCLUSION

We have reviewed Teresa's other claims and have determined that, because of our decision today, we need not address them in this appeal. In summary, we affirm, as

---

**6.** This is not to say that allocation of the dependency exemption may be perfected simply by a court's order. The custodial parent must complete IRS Form 8332, or its equivalent, au-

thorizing the noncustodial parent to claim the exemption. *Marriage of Einhorn,* 127 Ill.Dec. at 419, 533 N.E.2d at 37.

modified, the district court's order upholding the magistrate's dismissal of William's petition for modification of the divorce decree. We affirm the district court's denial of Teresa's request for attorney fees. Finally, we affirm, as modified, the district court's order awarding William the income tax dependency exemption, and remand this case to the district court to enter an order requiring Teresa to execute a waiver of her right to the dependency exemption, IRS Form 8332, subject to her right of reimbursement for the lost exemption if support is not fully paid. Costs to respondent, William Rohr. No attorney fees are awarded on appeal.

BURNETT and SWANSTROM, JJ., concur.