800 P.2d 85

**Teresa Ann ROHR, Plaintiff–Appellant,**

v.

**William Michael ROHR,
Defendant–Respondent.**

No. 18547.

Supreme Court of Idaho.

Oct. 19, 1990.

John B. Kugler, Pocatello, for plaintiff-appellant.

Gregory C. May, Pocatello, for defendant-respondent.

BOYLE, Justice.

This case is before us on review from the Idaho Court of Appeals, *Rohr v. Rohr*, 118 Idaho 698, 800 P.2d 94 (1989). Although we granted review on all issues, the primary question presented is one of first impression and requires us to decide whether the divorce courts of this state have authority to require a custodial parent to execute a written waiver of tax exemption status for Internal Revenue Service purposes pursuant to I.R.S. § 152(e) (1988). 26 U.S.C.A. § 152(e) (West 1988).

Teresa Rohr (hereinafter "Teresa"), asserts that the magistrate did not have authority to require her, as the custodial parent, to execute a waiver allowing William Rohr (hereinafter "William"), to claim the federal tax exemption for their minor child. In addition to the tax exemption issue, Teresa contends that the magistrate court erred in dismissing William's petition for modification of the decree without considering her independent claim for relief. Teresa also claims that the magistrate should have held William in contempt of court for failure to pay child support and that she

should have been awarded attorney fees for defending William's petition for modification of the decree.

The parties were divorced in July, 1986. Physical custody of their minor child was awarded to Teresa and William was allowed visitation rights pursuant to the stipulated decree of divorce. The decree required William to maintain insurance for the child and provided that if he remained current on child support obligations he would be entitled to claim the child for federal income tax exemption purposes.

Less than six months after the divorce decree was entered disputes arose between the parties. Subsequently, several motions were filed requesting the assistance of the magistrate court in enforcing each party's interpretation of the decree. At the hearing to determine whether William should be liable for Teresa's attorney fees, William's attorney orally moved to dismiss his motion for modification of the decree.[1] Later that same day Teresa filed a response to Williams's petition to modify. Two days later the magistrate entered an order denying attorney fees. Eight days later the magistrate signed an order dismissing William's petition for modification without prejudice.

Several weeks later a hearing was held on the contempt petitions and two separate orders were issued. In one order the magistrate judge ordered Teresa to

> [c]ease from claiming the minor child as a tax exemption in violation of and as provided for in said Decree and that the Plaintiff shall be liable for any tax assessment that the Defendant may be required to pay as a result of her claiming the minor child as an exemption.

In the other order the magistrate found that neither party was in contempt, however, he clarified the divorce decree by ordering William to make his child support payments in one monthly lump sum rather

---

1. Teresa claims that William's attorney did not make a formal motion to dismiss but merely expressed an intent to dismiss. The record, however, discloses the following dialogue:

  MR. MAY: All right, Your Honor, last week, we notified Mr. Kugler that we were going to dismiss on Motion to Modify the Decree of Divorce. Today, Your Honor, as I begin this argument, I would like to make a formal Motion to Dismiss that action completely.

  COURT: All right—

than every two weeks and set forth specific days and times when visitation with the child would be allowed.

The district court affirmed the magistrate's decision and on appeal from the district court the case was assigned to the Court of Appeals. The Court of Appeals affirmed the district court's decision on the issues of attorney fees, dismissal of William's petition and the tax exemption, however it remanded the case to the district court for the purpose of requiring the magistrate court to dismiss Teresa's claim with a reasonable explanation or to hear it on the merits. We granted Teresa's petition for review.

## I.

### *Standard on Appeal*

■■■Error cannot be presumed on appeal, but requires an affirmative showing, *Carpenter v. Double R Cattle Co.*, 108 Idaho 602, 701 P.2d 222 (1985), and findings of fact made by a trial court will not be set aside unless they are clearly erroneous. I.R.C.P. 52(a); *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982); *Marshall Bros. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978); *Beall Pipe & Tank Corp. v. Tumac Intermountain, Inc.*, 108 Idaho 487, 700 P.2d 109 (Ct.App.1985). Further, the factual findings of the trial court will not be disturbed on appeal where they are supported by substantial and competent evidence, even though such evidence may be conflicting, *State v. Tierney*, 109 Idaho 474, 708 P.2d 879 (1985); *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985); *Pointner v. Johnson*, 107 Idaho 1014, 695 P.2d 399 (1985); *Circle C Ranch Co. v. Jayo*, 104 Idaho 353, 659 P.2d 107 (1983), and on appeal the appellate court's responsibility is to review the record to determine whether the trial court's findings are supported by substantial, competent evidence. *Heacock v. Madsen*, 108 Idaho 65, 696 P.2d 916 (Ct.App.1985). This

reflects the view that deference must be given to the special opportunity of the trial court to assess and weigh the credibility of the witnesses who appear before it. *State v. Tierney*, 109 Idaho 474, 708 P.2d 879 (1985); *Wolford v. Tankersley*, 107 Idaho 1062, 695 P.2d 1201 (1984).

## II.

### *Child Support and Visitation*

■ The magistrate clarified the divorce decree by ordering William to pay the monthly child support payment in one lump sum on the first of each month rather than every two weeks, and in so doing did not abuse his discretion. Our review of the record satisfies us that William was substantially current in his child support obligation although he had made several late payments. The record demonstrates that William thought that he had an agreement with Teresa whereby he could pay his child support in two monthly installments because he received his employment paycheck every two weeks. The magistrate declined to find William delinquent or in arrears on child support and did not find him in contempt. In this we find no error.

■ Likewise, the magistrate's finding that Teresa denied William visitation is supported by substantial and competent evidence in the record and will not be disturbed on appeal.

## III.

### *Dismissal of Petition*

Teresa asserts that it was error to dismiss William's petition to modify the decree when her responsive pleading seeking affirmative relief was pending.

The Court of Appeals correctly determined that the magistrate acted pursuant to the discretionary authority prescribed under I.R.C.P. 41(a)(2) [2] rather than under

2. **Rule 41(a)(2). Dismissal by order of court.—** Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a

counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless oth-

I.R.C.P. 41(a)(1).[3] In this instant appeal no notice of dismissal or signed stipulation of dismissal had been filed in the trial court. One of these written documents must be filed as a prerequisite to obtaining a dismissal pursuant to I.R.C.P. 41(a)(1). However, I.R.C.P. 41(a)(2) allows dismissal of an action by court order upon such terms and conditions as the court deems proper. The dismissal as well as the terms and conditions are discretionary with the trial court. *Adney v. Mississippi Lime Co. of Missouri*, 241 F.2d 43 (7th Cir.1957).

It is well established that our adoption of the Idaho Rules of Civil Procedure is presumably with the interpretation placed upon similar language in the Federal Rules of Civil Procedure by the federal courts. *Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990); *Chacon v. Sperry Corp.*, 111 Idaho 270, 723 P.2d 814 (1986). The Court of Appeals' analysis of the issue in the instant case is noteworthy and bears quoting.

Adoption of I.R.C.P. 41(a)(1) and 41(a)(2) (hereinafter Rules), however, has altered the practice of obtaining a voluntary dismissal. The Idaho Rules, which are almost identical to the corresponding federal rule, define three ways to dismiss an action. The first and second methods, covered by Rule 41(a)(1), provided for dismissal by notice or by stipulation of the parties. Rule 41(a)(2) provides for dismissal by order of the court. Generally, voluntary dismissal under Rule 41(a)(1) is a matter of right; the plaintiff need not obtain the court's consent to do so. *See* 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2363 (1971) (hereinafter WRIGHT & MILLER). However, Rule 41(a)(1) does require the plaintiff to *file*

*notice* of the dismissal. Filing connotes the delivery of an instrument or writing to the clerk or proper official for the purpose of being kept on file by him as a matter of reference or record. BLACK'S LAW DICTIONARY 566 (5th ed. 1979); *see City of Overland Park v. Nikias*, 209 Kan. 643, 498 P.2d 56 (1972). As we noted above, William failed to file such a notice, but instead made an oral motion in open court. Therefore, Rule 41(a)(1) is inapplicable in this case.

Our review of Teresa's claim does not end here. Rule 41(a)(2) provides for dismissal by court *order*, upon such terms and conditions as the court deems proper. Unlike Rule 41(a)(1), a motion to dismiss under this rule is not a matter of right, but is discretionary with the trial court *both* as to whether a dismissal should be allowed, as well as to the terms and conditions to be imposed, if allowed. *Adney v. Mississippi Lime Co. of Missouri*, 241 F.2d 43 (7th Cir.1957); *see* 5 MOORE'S FEDERAL PRACTICE ¶ 41.05[1] (2d ed. 1988) (hereafter MOORE). The purpose for the court's discretionary authority under this rule is to insure that the court pays due regard to the interests of both the plaintiff and defendant; dismissal of the plaintiff's action must not unfairly jeopardize the defendant's interests. *See* MOORE at ¶ 41.05[1]; *Smithloff v. Benson*, [173 Ga. App. 870] 328 S.E.2d 759 (Ga.App.1985). Furthermore, a counterclaim is not necessarily subject to dismissal because of dismissal of the plaintiff's action. *Smithloff v. Benson, supra.* Rule 41(a)(2) further states that if the defendant files a counterclaim *prior* to service upon him or her of the plaintiff's motion to dismiss, the action shall not be dis-

---

erwise specified in the order, a dismissal under this paragraph is without prejudice.

**3. Rule 41(a)(1). Dismissal of actions—Voluntary dismissal—Effect thereof—By plaintiff—By stipulation.**—Subject to the provisions of Rule 23(c), of Rule 66, and of any statute of the state of Idaho an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, of the United States, or of any state an action based on or including the same claim.

missed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. *See* MOORE ¶ 41.09; *United States v. Professional Air Traffic Controllers Organization*, 449 F.2d 1299 (3rd Cir.1971). Appellate courts which have addressed application of this rule generally follow the principle that dismissal pursuant to Rule 41(a)(2) should be allowed unless the defendant will suffer some legal prejudice, other than the prospect of a second lawsuit. *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir.1982); WRIGHT & MILLER § 2364. Unless otherwise specified in the court's order, voluntary dismissal under this rule is without prejudice. MOORE § 41.10. The prevailing view, which we adopt today, is that such a motion is addressed to the sound discretion of the trial court; it will not be overturned on appeal absent an abuse of discretion. *See Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir.1982).

*Rohr v. Rohr*, 118 Idaho 698, 702, 800 P.2d 94, 98 (Ct.App.1989).

■ We adopt the prevailing rule and hold that a motion to dismiss pursuant to Rule 41(a)(2) is addressed to the sound discretion of the trial court and its ruling will not be overturned on appeal absent an abuse of discretion. *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir.1982). The magistrate court dismissed William's petition and we find no error or abuse of discretion in that regard. However, our independent review of the record leaves us concerned that Teresa's pending claim was improvidently dismissed without addressing its merits. We affirm the magistrate's dismissal of William's claim pursuant to Rule 41(a)(2), however, we remand to the district court to enter an order requiring the magistrate court to address and resolve Teresa's claim on its merits.

## IV.

### *Attorney Fees*

■ Teresa argues that the magistrate erred in denying her request for an award of attorney fees in defending against William's petition to modify the decree. Rule 41(a)(2) allows the magistrate to condition the dismissal upon the payment of costs and fees. Ordinarily, the court should condition the dismissal of plaintiff's action upon the payment of defendant's costs of litigation, and in some cases fees. *See* 5 *Moore's Federal Practice*, ¶ 41.06, pp. 41–74 to 41–81 (1989), and 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2366, pp. 176–83 (1971). The purpose for this rule is to alleviate the inconvenience to the defendant. *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir.1976).

■ In this case, however, Teresa had not made any responsive filings at the time William orally moved to dismiss his petition. Therefore, Teresa was only required to appear and argue *her motion* for attorney fees. The magistrate determined that the dismissal of William's petition to modify did not in any way prejudice Teresa. The contempt issues remained pending and the litigation was not entirely terminated by the dismissal of William's petition to modify. Therefore, the magistrate determined that conditions on the dismissal would not be warranted. A magistrate is not obliged to order payment of attorney fees, 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2366, p. 180 (1971), and the trial court has broad discretion in conditioning a dismissal. *McLaughlin v. Cheshire*, 676 F.2d 855 (D.C.Cir. 1982); *Blackburn v. Ohio*, 60 F.R.D. 197 (S.D.Ohio 1973). It does not appear to us that the magistrate abused his discretion by not awarding attorney fees as a condition of dismissal. A magistrate's discretionary decision will not be disturbed on appeal absent an abuse of that discretion. *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 766 P.2d 751 (1988).

## V.

### *State Allocation of Federal Tax Exemption*

The remaining issue is one of first impression and requires us to decide whether

the divorce courts of this state have authority to require a custodial parent to execute a written waiver of tax exemption under 26 U.S.C.A. § 152(e) (hereinafter I.R.S. § 152(e)) which provides in pertinent part:

(e) **Support test in case of child of divorced parents, etc.—**

(1) **Custodial parent gets exemption.—** Except as otherwise provided in this subsection, if—

(A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

(2) **Exception where custodial parent releases claim to exemption for the year.—**A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may be regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

■ In addressing this issue in the instant case the Idaho Court of Appeals carefully reviewed both federal and state law before it concluded that Idaho magistrates have the authority and discretion in divorce proceedings to allocate the income tax dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver of the exemption under I.R.C. § 152(e). *Rohr v. Rohr*, 118 Idaho 698, 800 P.2d 94 (Ct.App.1989). We agree with the Court of Appeals' holding on this issue and are of the opinion its analysis is noteworthy.

Finally, we address Teresa's assertion that the magistrate erred when he concluded that William was entitled to claim the dependency tax exemption for the couple's child. Teresa raises two reasons in support of her argument. First, she submits that, under federal law, only a custodial parent may claim the exemption. I.R.C. § 152(e) (1988). Second, Teresa asserts that, even if William is entitled to the dependency tax exemption under federal law, he has failed to make timely payments of child support, thus negating his entitlement to the exemption. Because Teresa's claims raise independent questions for our review, we will address each in turn.

### A.
### Federal Law

Teresa first urges us to conclude that I.R.C. § 152(e) precludes a divorce court from allocating the dependency exemption to a noncustodial parent. Teresa submits that only she, as the custodial parent, can claim or waive this exemption. Teresa raises a question of first impression for this court; at issue is whether a divorce court may allocate the dependency exemption, pursuant to I.R.C. § 152(e), to a noncustodial parent without the custodial parent's approval. We hold, as a matter of law, that a divorce court may make such an allocation.

Prior to 1985, divorce courts could allocate a dependency exemption to either the custodial or noncustodial parent.

*See, e.g., Morphew v. Morphew*, 419 N.E.2d 770 (Ind.App.1981). However, in 1984, enactment of an amendment to I.R.C. § 152, occasioned by the Tax Reform Act of 1984, P.L. No. 98–369, § 423(a), 98 Stat. 494, 799 (1984), produced significant changes in the standards for allocation of the dependency exemption. Under that amendment only the custodial parent is entitled to claim the dependency exemption, subject to three exceptions: cases involving multiple-support agreements, I.R.C. § 152(e)(3); cases involving "qualified pre–1985 instruments," I.R.C. § 152(e)(4); and the exception applicable in the present situation, where the custodial parent waives the dependency exemption by written waiver. I.R.C. § 152(e)(2). The noncustodial parent may waive the dependency exemption on a yearly basis for a number of specified years, or for all future years. 26 C.F.R. § 1.152–4T (1988). Congress' purpose for amending the statute was to resolve factual disputes between divorced parents over the issue of who could claim the dependency exemption.

Thus, the new law has clarified the question of when each parent may claim the exemption, and in so doing it has undercut the authority of judges simply to award the exemption, as the magistrate did here. However, it has left unanswered the question of whether a divorce court can indirectly accomplish the same thing by directing the custodial parent to execute a waiver. Several appellate courts have concluded that the amendment divests divorce courts of this authority. *McKenzie v. Kinsey*, 532 So.2d 98 (Fla.App.1988); *Lorenz v. Lorenz*, [166 Mich.App. 58] 419 N.W.2d 770 (Mich.App.1988); *Hughes v. Hughes*, [35 Ohio St.3d 165] 518 N.E.2d 1213 (Ohio 1988); *Gleason v. Michlitsch*, [82 Or. App. 688] 728 P.2d 965, 967, n. 6 (Ore. App.1986); *Brandriet v. Larsen*, 442 N.W.2d 455 (S.Dak.1989); *Davis v. Fair*, 707 S.W.2d 711 (Tex.App.1986). For the most part these appellate courts have reasoned that, other than the three enumerated exceptions provided for in I.R.C.

§ 153(e), there is no explicit authorization in the amendment for a divorce court to allocate the dependency exemption. *See Brandriet v. Larsen, supra.*

In contrast, appellate courts from other jurisdictions have concluded that, notwithstanding the amendment, a divorce court still has authority to allocate a dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver. *Lincoln v. Lincoln*, [155 Ariz. 272] 746 P.2d 13 (Ariz.App.1987); *In re Marriage of Einhorn*, [178 Ill.App.3d 212, 127 Ill.Dec. 411] 533 N.E.2d 29 (Ill.App.1988); *Fudenberg v. Molstad*, 390 N.W.2d 19 (Minn.App.1986); *Fleck v. Fleck*, 427 N.W.2d 355 (N.Dak.1988); *Cross v. Cross*, 363 S.E.2d 449 (W.Va.1987); *Pergolski v. Pergolski*, [143 Wis.2d 166] 420 N.W.2d 414 (Wis.App.1988). Following the lead of the Minnesota Court of Appeals in *Fudenberg v. Molstad, supra*, these courts generally agree that, regardless of the amendment's restrictive language, state divorce courts retain the equitable authority to direct execution of a waiver by the custodial parent where one is so required. *Cross v. Cross*, 363 S.E.2d at 458. In reaching this conclusion, there is a consensus among these appellate courts that judicial allocation of the dependency exemption does not interfere with the amendment's purpose, namely to rid the Internal Revenue Service of the burden of deciding who may claim the exemption. As noted in *Cross v. Cross, supra*, what Congress sought to achieve in amending I.R.C. § 152(e) was certainty in the allocation of the dependency exemption for federal tax administration purposes; nothing in the amendment precludes a domestic court from requiring a custodial parent to execute such a waiver. *Id.* at 457.

We agree with this reasoning. In this state, the dependency exemption has traditionally been treated as a valuable right which can be allocated, like other rights, by the divorce court. In many cases, the parties themselves will allocate the exemption pursuant to the terms of their separate agreement. However, we

find nothing in the wording of the amendment nor in the legislative history which expressly prohibits a divorce court from directing allocation of the dependency exemption to the noncustodial parent; the amendment itself contains no requirement that the waiver be voluntarily signed and likewise, the amendment does not prohibit a divorce court from directing the custodial parent to sign such a waiver. *In re Marriage of Einhorn,* [127 Ill.Dec. at 419] 533 N.E.2d at 37. If Congress had intended to prohibit divorce courts from allocating the exemption, it could have stated so in the amendment. Furthermore, we believe that divorce courts are in a much better position than the IRS to ensure efficient enforcement of child support orders directly linked to allocation of the dependency exemption. If a custodial parent who executes a waiver finds later that he or she has not received the child support payments which the noncustodial spouse was obligated to make, then the custodial spouse may go to court and obtain an order or judgment compelling the noncustodial spouse to pay the value of the lost exemption. We therefore hold that, in divorce proceedings, a divorce court has discretion to allocate the income tax dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver of the exemption under I.R.C. § 152(e).

In so holding, we intimate no view that directing a waiver is the *only* permissible means of assuring that the proper party ultimately receives the economic benefit of the tax exemption. Another method, recognized by the South Dakota Supreme Court in *Brandriet v. Larsen, supra,* is to adjust the child support itself to reflect the benefit realized by the party claiming the exemption. This approach is consistent with I.C. § 32–706(A)(6), which currently allows the court in fixing the level of support to consider the "actual tax benefit recognized by the party claiming the federal tax exemption." Although it may be debated whether child support levels should be fixed by reference to factors other than need and ability to pay, it is permissible under federal law and the Idaho statute to take the value of the exemption into account, thereby indirectly allocating its economic value between the parties. (Footnotes omitted.)

*Rohr v. Rohr,* 118 Idaho 698, 703–706, 800 P.2d 94, 99–102 (Ct.App.1989).

Although several state appellate courts have held that I.R.C. § 152(e) preempts their divorce courts' discretion and authority to allocate the federal tax exemption, we are of the opinion that the opposite position taken by many other appellate courts is a more reasonable and functional policy. In amending I.R.C. § 152(e) in 1984, Congress allowed the allocation of the federal tax exemption by providing for a waiver of the exemptions to be executed by the custodial parent. I.R.C. § 152(e). The reason the law was changed in 1984 was to relieve the Internal Revenue Service of involvement in resolving disputes between parents over the tax exemption. Enactment of amended I.R.C. § 152(e) persuades us that Congress intended that state divorce courts would allocate the tax exemption so long as it was accomplished within the framework of the statute by execution of a waiver. As noted by the Court of Appeals, in order to shift the dependency exemption, the custodial parent must sign a written waiver foregoing the exemption, and the noncustodial parent must attach this waiver to his or her income tax return for the taxable year in question. The Internal Revenue Service has provided Form 8332, "Release of Claim to Exemption for Child of Divorced or Separated Parents," to accomplish this transfer of the tax exemption to the noncustodial parent. *See* 26 C.F.R. § 1.152–4T (1988). The mechanism and procedure for transfer of the tax exemption to the noncustodial parent has been provided by both the Congress and the Internal Revenue Service. No compelling reason exists for not granting the divorce courts of this state the authority and discretion, in the proper case and circumstance, to utilize this method to equitably allocate the rights of the parties.

The suggested alternative of denying our divorce courts authority to order the custo-

dial parent to sign the exemption and then imposing upon the court the responsibility of taking tax consequences into account in making a property division is a circuitous process that is cumbersome at best and beset with the likelihood of error. Our divorce courts should have the authority of doing directly what is suggested to be accomplished indirectly. Our holding today is consistent with the stated purpose of Congress in relieving the Internal Revenue Service of the responsibility of deciding which of the parents may claim the tax exemption.[4]

The magistrate courts of this state work on a daily basis with the division of property rights, child support, visitation rights, responsibility for medical care and a myriad of other significant issues in divorce actions. Rather than requiring in every case the circuitous process of allocating a division of property, adjusting child support payments or some other process in order to balance the effect of the tax exemption, and then leaving the parties to work with the Internal Revenue Service, better policy reasons and practicality in dealing with this issue compels us to hold that the magistrate courts who are confronted with these issues on a regular basis be allowed the discretion and the authority to resolve the tax exemption issue directly if they are of the opinion that it is a proper remedy to utilize. Obviously, such power and authority is to be exercised cautiously and prudently. However, the magistrate courts of this state deal with issues of equal or greater significance and impact than tax exemptions and they should have this alternative available to utilize in the proper circumstances. Idaho's magistrate courts are the courts of general jurisdiction for divorce cases and have the plenary and equitable power to order the parties to execute various documents of significance such as deeds, assignment of interest in stocks and bonds, insurance policies, bills of sale, and numerous other documents during the divorce process. We are of the opinion that the same discretionary and equitable power exists in our divorce courts with regard to ordering a party to execute a waiver for the federal tax exemption. Accordingly, we hold that the judicial allocation of the dependency exemption is not inconsistent with and does not interfere with I.C.R. § 152(e). *See Cross v. Cross*, 363 S.E.2d 449 (W.Va.1987).

At the time the divorce decree in the present case was entered I.C. § 32–706 did not specifically require the court to consider the effect of the federal tax exemption.[5] However, the magistrate court was statutorily required at that time to consider the "financial resources, needs, and obligations of both the custodial and noncustodial parents." Certainly, the allocation of the federal tax exemption affects the financial resources of either the custodial or non-custodial parent and the magistrate court did not err in requiring Teresa to either sign the tax exemption waiver or pay William the additional tax he incurred as a result of not having the exemption.

In this case the parties stipulated to the divorce decree which by its express terms allows William the right to claim the federal tax exemption provided he is current with his child support payments. The record supports the magistrate's finding that William was substantially current in

---

**4.** *See* H.R.Rep. No. 98–432, part II, 98 Cong., 2d Sess. 3 (1984) (Legislative History of the Deficit Reduction Act, P.L. 98–369), reprinted in 1984 *U.S.Code Cong. & Ad.News,* 697, 1140. The report states:

The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

**5.** The current version of I.C. § 32–706 as amended requires the court to consider the "actual tax benefit recognized by the party claiming the federal child dependency exemption."

his child support payments. The magistrate court simply ordered Teresa to comply with the divorce decree to which she had previously stipulated and allow William the tax exemption. In the alternative, the magistrate ordered Teresa to compensate William for the added tax for which he became liable because of not having the claimed exemption available. Under these circumstances this order was within the power of the magistrate and was not an abuse of discretion.

Directing a party to execute the waiver is not the only means of allocating the economic benefit of the tax exemption. The magistrate court may, and is authorized by the current version of I.C. § 32–706, to take account of the value of the exemption and allocate its effect when it makes an initial or modified child support order. Nonetheless, the authority to require execution of waiver is an alternative which the divorce courts of this state should have available to utilize under the proper circumstances.

We have considered the other issues raised by Teresa and conclude they are without merit.

Therefore, we affirm the magistrate court and district court decisions concerning the federal tax exemption issue, denial of attorney fees and dismissal of William's petition to modify. However, we remand for a hearing or further proceedings on Teresa's Response to Petition to Modify which seeks affirmative relief.

Costs on appeal to respondent. No attorney fees awarded on appeal.

BAKES, C.J., McDEVITT, J. and WOOD, District Judge, Pro Tem., concur.

JOHNSON, Justice, concurring and dissenting.

I concur with the majority opinion, except the portion holding that our divorce courts may allocate the income tax dependency exemption to the noncustodial parent by directing the custodial parent to execute a written waiver of the exemption under I.R.C. § 152(e)(2). In my view, this holding emasculates the intent of Congress in enacting the scheme for determining which parent is entitled to claim the exemption.

The written waiver provided for in I.R.C. § 152(e)(2) is one of only three exceptions to the general rule established in I.R.C. § 152(e)(1), providing that the custodial parent will be entitled to the dependency exemption under the circumstances specified there. The other exceptions relate to multiple-support agreements (I.R.C. § 152(e)(3)) and "qualified pre–1985 instruments" (I.R.C. § 152(e)(4)). If Congress had intended that divorce courts could allocate the exemption, it would have been easy to have included this as a fourth exception. One wonders how many other portions of the Internal Revenue Code may now be rewritten by the decisions of trial courts ordering taxpayers to execute various returns, waivers, elections, or other documents.

In my view, our divorce courts are very capable of dealing with the subject of child support after determining whether the custodial parent intends to claim the dependency exemption, without the need to rewrite the Internal Revenue Code to allow courts to require the waiver of the exemption.